IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 16-cv-03038-KLM

THE ESTATE OF JEFFREY SCOTT LILLIS, by and through its co-personal representatives Meghan Lillis and Michele Driscoll,
MEGHAN LILLIS, individually,
C.A.L., individually, a minor, by and through Michele Driscoll as guardian,
C.S.L., individually, a minor, by and through Michele Driscoll as guardian,
A.L., individually, a minor, by and through Robin Booth as next friend and mother,
JORDAN LILLIS, individually, and
ASHLEY PERRY, individually,

    Plaintiffs,

v.

CORRECT CARE SOLUTIONS, LLC,
CORRECTIONAL HEALTHCARE COMPANIES, LLC,
GREAT PEAK HEALTHCARE SERVICES, P.C.,
CORRECTIONAL HEALTHCARE PHYSICIANS, P.C.,
BOARD OF COUNTY COMMISSIONERS OF ARAPAHOE COUNTY,
DAVID C. WALCHER, in this official capacity as Arapahoe County Sheriff,
DENNIS L. FURR, D.O. individually, and
RUTH KYAMBADDE, RN, individually;

    Defendants.
_____

**ORDER**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

    This matter is before the Court on Plaintiffs' **Motion to Compel Discovery** [#106][1]

(the "Motion"). Defendant Ruth Kyambadde ("Nurse Kyambadde") and interested non-party

nurses Anita Brown, Jason Frank and Nancy Winegar filed a Response in Opposition to

the Motion [#113]. Additionally, Defendants Correct Care Solutions, LLC, Correctional

---

[1] "[#106]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). This convention is used throughout this Order.

-1-

Healthcare Companies, LLC, Great Peak Healthcare Services, P.C., Correctional Healthcare Physicians, P.C., and Dennis L. Furr, D.O. (collectively, the "CHC Defendants") filed a separate Response in Opposition to the Motion [#114], as did former Defendants Maxim Healthcare Services, Robly Evans and Denise Elwell (the "former Maxim Defendants")[2] [#116]. The Court held a hearing on the Motion on November 6, 2018 and took the matter under advisement. The Court has considered the Motion, Responses, the entire case file, the arguments made at the hearing and the applicable law, and is sufficiently advised in the premises. For the reasons set forth below, the Motion [#106] is **GRANTED in part and DENIED as moot in part**.

## I. Background

This case involves the death of an inmate, Jeffrey Scott Lillis, while he was detained in the Arapahoe County Detention Facility ("ACDF") in Arapahoe County, Colorado. *Compl.* [#1] ¶¶ 1, 40. In their First Amended Complaint [#118], Plaintiffs bring the following remaining claims: (1) violation of the Fourteenth Amendment based on deliberately indifferent medical care against Defendant Kyambadde under 28 U.S.C. § 1983; (2) violation of the Fourteenth Amendment based on deliberately indifferent policies against Defendants Board of County Commissioners of Arapahoe County and David C. Walcher in his official capacity under 28 U.S.C. § 1983; and (3) wrongful death against the CHC Defendants under state law. *Id.* at 31-39. In other words, the case involves a blend of federal and state law claims against Mr. Lillis's prison medical care providers.

During their investigation into the facts underlying the case, Plaintiffs discovered that

---

[2] On February 7, 2019, the parties filed stipulations of dismissal with respect to Maxim Healthcare Services, Robly Evans, and Denise Elwell. *See* [#133, #134]. Therefore, the present Motion [#106] is moot as to the relief requested against them.

Defendant Furr had been admonished by the Colorado Medical Board (the "Medical Board") for the care and treatment he provided to Mr. Lillis prior to Mr. Lillis's death from pneumonia at ACDF. *Motion* [#106] at 2, n.1. They also learned that the Colorado Nursing Board Professional Review Committee (the "Nursing Board") conducted an inquiry into the care and treatment of Mr. Lillis by Nurse Kyambadde.[3] *Id.* at 2. Plaintiffs subsequently sought production by Defendants (including those nurses who were previously dismissed from the case) of "all records . . . relating to any and all proceedings by the [Medical Board] and the [Nursing Board] . . . regarding the death of Jeffrey Lillis on December 14, 2014" (hereinafter the "Peer Review Documents"). *Id.*

Defendants argue that the Peer Review Documents are protected by Colorado's quality assurance/peer review privilege, which is codified at Colo. Rev. Stat. § 12–36.5–101 *et seq.*, and which explicitly "protects the records of a professional review committee from all forms of subpoena or discovery." *Colo. Med. Bd. v. Office of Admin. Courts*, 333, P.3d 70, 72 (Colo. 2014). In light of their contention, the CHC and former Maxim Defendants provided privilege logs to Plaintiffs under Fed. R. Civ. P. 26(b)(5). [#106-1; #106-2]. Unsatisfied, Plaintiffs sought an Order from the Court requiring Dr. Furr to answer questions at his deposition regarding the Medical Board proceedings against him (hereinafter the "Peer Review Information"). The Court directed the parties to brief the issue, and the Motion followed. In the Motion, Plaintiffs make clear that they seek to compel production of both the Peer Review Documents and the Peer Review Information

---

[3] The Nursing Board also conducted an inquiry into the care and treatment of Mr. Lillis by nurses who have been dismissed from this case. *See Order* [#87] at 50; *see also* [#133, #134]. Those nurses are "interested non-parties" Anita Brown, Jason Frank, Nancy Winegar, Robly Evans, and Denise Elwell.

from Dr. Furr and the nurse Defendants.

## II. Legal Standards

### A. Discovery

The Federal Rules of Civil Procedure allow for the discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). In this case, the parties do not seriously dispute the relevance of the Peer Review Documents and Information. The party resisting discovery based on a privilege has the burden of establishing that the privilege applies. *Zander v. Craig Hosp.*, 743 F. Supp. 2d 1225, 1231-32 (D. Colo. 2010) (citation omitted). In establishing the applicability of the privilege, the resisting party must expressly assert it and describe the nature of the purportedly-privileged documents, ordinarily by tendering a privilege log. *Id.* As noted above, Defendants tendered privilege logs here.

### B. Colorado's "Peer Review" Privilege

Colorado law recognizes a statutory "peer review" privilege, which is set forth in three separate statutes comprising the Colorado Professional Review Act ("CPRA"): Colo. Rev. Stat. §§ 12–36.5–101, 12–36.5–102 and 12–36.5–103. The privilege may be invoked for "records of a professional review committee, a governing board, or the committee on anticompetitive conduct" of the Colorado Medical Board. Colo. Rev. Stat. § 12–36.5–101. In enacting the CPRA, the General Assembly's stated goals were to "encourage physicians to engage in peer review and to provide immunity to the physicians [who] provide their services [to the Board] so that they may 'exercise their professional knowledge' and judgment without undue fear of litigation." *Etter v. Bibby*, No. 10-cv-00557-JLK-CBS, 2011 WL 5216855, at *4 (D. Colo. Nov. 2, 2011) (citations omitted).

-4-

**C.     Federal Law Regarding Privileges**

"When federal law provides the governing substantive law in a lawsuit, the federal common law of privileges will govern." *Moses v. Providence Hosp. & Med. Ctrs., Inc.*, No. 04 CV 74889 DT, 2007 WL 1806376, at *2 (E.D. Mich. June 22, 2007) (internal quotation marks and citation omitted). Rule 501 of the Federal Rules of Evidence further provides that although federal privilege law controls in cases proceeding under federal jurisdiction, state law governs privilege in civil cases involving state law. Rule 501 states:

> The common law – as interpreted by United States courts in the light of reason and experience – governs a claim of privilege unless any of the following provides otherwise:
> • the United States Constitution;
> • a federal statute; or
> • rules prescribed by the Supreme Court.
> But in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision.

Here, federal law provides the rule of decision for the section 1983 claims and state law provides the rule of decision for the wrongful death claim. In addition, as discussed in more detail below, there is no applicable federal statutory or common law privilege for peer review information. *Etter*, 2011 WL 5216855, at *5. The United States Supreme Court has stated that Rule 501 "authorizes federal courts to define new privileges by interpreting 'common law principles . . . in the light of reason and experience." *Jaffee v. Redmond*, 518 U.S. 1, 8 (1996). Indeed, as recognized in the Senate Report accompanying the 1975 adoption of the Federal Rules of Evidence, "Rule 501 'should be understood as reflecting the view that the recognition of privilege based on a confidential relationship . . . should be determined on a case-by-case basis." *Id.* (citing S. Rep. No. 93-1277, p. 13 (1974)).

As many courts have noted, in determining whether a privilege should be recognized

in a specific instance, courts must start with the fundamental maxim that "the public . . . has a right to every man's evidence." *Id.* at 9 (citing *United States v. Bryan*, 339 U.S. 323, 331, (1950); *United States v. Nixon*, 418 U.S. 683, 709, (1974)).  Thus, "[e]xceptions from the general rule disfavoring testimonial privileges may be justified" only when there is "'public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth.'" *Id.* (quoting *Trammel v. United States*, 445 U.S. 40, 50, (1980)).  In other words, a new evidentiary privilege should not be created unless it "promotes sufficiently important interests to outweigh the need for probative evidence . . . ." *Trammel*, 445 U.S. at 51.

### III.  Analysis

Plaintiffs contend that Defendants' assertion of the Colorado peer review privilege is inappropriate in light of their federal claims, the federal common law which has not recognized such a privilege, and the importance of the Peer Review Documents and Information to their federal claims.  *Plaintiffs' Brief* [#106] at 5-13.  Defendants contend that regardless of the presence of federal claims in this case, the Court should recognize the Colorado peer review privilege.  *Former Maxim Defendants' Brief* [#116] at 3-12.

### A.    Applicability of Colorado Peer Review Privilege

Colorado's peer review privilege does not apply in this case.  "Because this is a prisoner civil rights case brought under § 1983, federal law supplies the rule of decision, and [Federal] Rule [of Evidence] 501 applies.  Indeed, '[t]he [primary] claims made here are federal constitutional claims . . . .  It thus appears particularly inappropriate to allow the use of state evidentiary privileges."  *Grabow v. County of Macomb*, No. 12-10105, 2013 WL 3354505, at *5 (E.D. Mich. July 3, 2013) (citing *Leon v. County of San Diego,* 202 F.R.D.

631, 636 (S.D. Cal. 2001)).  The Court further agrees with other courts that have recognized that when a plaintiff alleges that a defendant acted under color of state law to violate a constitutional right, it is less appropriate to defer to a state's law of privilege.  *See, e.g.*, *Weiss v. County of Chester*, 231 F.R.D. 202, 207 (E.D. Pa. 2005).

Although "Rule 501 has been recognized as allowing the adoption of existing state evidentiary codes to govern federal cases where the state rules are not in conflict with the federal rules," that is not the situation here.  *See Leon*, 202 F.R.D. at 635.  The absolute bar on discovery provided by Colorado's statutory peer review privilege "conflicts with the liberal discovery rules applicable in federal courts, and it conflicts with the necessity of finding state action inherent in the federal civil rights law."  *Id.* at 636.  For these reasons, Colorado's peer review privilege is inapplicable to this case.

**B.   Peer Review Privilege - Federal Common Law**

As indicated above, the overwhelming majority of federal courts agree that there is no federal common law peer review privilege.  *See Williams v. Univ. Med. Ctr. of S. Nev.*, 760 F. Supp. 2d 1026, 1031 (D. Nev. 2010); *Nilavar v. Mercy Health Sys. W. Ohio*, 210 F.R.D. 597, 604 (S.D. Ohio 2002) (collecting cases).  As stated by another court, "the majority of federal court cases, 'along with the Supreme Court's recognition that a peer review privilege has no historical basis in the common law of the federal courts, *University of Pa. v. E.E.O.C.*, 493 U.S. 182, 195, 110 S.Ct. 577, 107 L.Ed.2d 571 (1990), persuades this court that a physician peer review privilege does not exist in federal common law.'"  *Grabow*, 2013 WL 3354505, at *6.

**C.   Creation of a Peer Review Privilege is Unwarranted in This Case**

As instructed by applicable precedent, the Court next considers whether creating

a peer review privilege in the context of this case "promotes sufficiently important interests to outweigh the need for probative evidence." *See Trammel*, 445 U.S. at 51. The Court is mindful of the Tenth Circuit's recognition of the "problems" with applying a privilege when "both federal claims and pendant state law claims [are] implicated [in the same lawsuit, and] the privilege is upheld by one body of law, but denied by the other . . . ." *Sprague v. Thorm Ams.*, 129 F.3d 1355, 1368 (10th Cir. 1997) (citing *Motley v. Marathon Oil Co.*, 71 F.3d 1547, 1551 (10th Cir. 1995); see also *Pearson v. Miller*, 211 F.3d 57, 66 (3d Cir. 2000) (holding: "[A]pplying two separate disclosure rules with respect to different claims tried to the same jury would be unworkable . . . . When there are federal law claims in a case also presenting state law claims, the federal rule favoring admissibility, rather than the state law privilege, is the controlling rule.") (citation and internal quotations omitted). The Court of Appeals has concluded that "[i]f such a conflict exists, then an analytical solution must be worked out to accommodate the conflicting policies embodied in the state and federal privilege law." *Id.*

Briefly, the parties identify the "conflicting policies" surrounding the peer review privilege as follows. Defendants point out that the main policy reason for the Colorado peer review privilege is to safeguard the integrity of the medical professional disciplinary process under state law, and to "encourage medical providers to be candid by eliminating risk that peer review information will be used against them in subsequent litigation, which in turn promotes patient health and safety." *Former Maxim Defendant's Brief* [#116] at 7. On the other hand, Plaintiffs illuminate two policies which support rejection of a blanket peer-review privilege under federal law. The first is the federal courts' reluctance to create new rights in the absence of legislation by Congress. According to Plaintiffs, "'Congress spoke loudly

-8-

with its silence in not including a privilege against discovery of peer review materials in the [Health Care Quality Improvement Act of 1986],' which is the statute giving certain officials conducting peer reviews immunity from suit under certain circumstances." *Plaintiff's Brief* [#106] at 6-7 (citing *Teasdale v. Marin Gen. Hosp.*, 138 F.R.D. 691, 694 (N.D. Cal. 1991)). More importantly, as repeated in Tenth Circuit jurisprudence, Plaintiffs assert that the federal courts should be loathe to create "disfavored" evidentiary privileges because they "contravene the fundamental principle that the public . . . has a right to every man's evidence." *Adkins v. Christie*, 488 F.3d 1324, 1328 (11th Cir. 2007) (quoting *Univ. of Pa. v. EEOC*, 493 U.S. 182, 189 (1990)). They point out that courts have found "an absence of objective experience supporting the view that strict confidentiality of peer reviews is an essential prerequisite to achieving the public's interest in maintaining quality health care." *Syposs v. United States*, 63 F. Supp. 2d 301, 308 (W.D.N.Y. 1999). They further argue that to the extent some "degree of confidentiality [is] needed to obtain participation in effective peer reviews," courts can address that need through entry of protective orders "without imposing inflexible obstacles to their fundamental role of seeking truth and doing justice." *Id.* at 308-09.

Although the existence of dueling policies behind recognition or disregard of state peer review privileges is clear, it is also clear that those policies must be weighed in light of the facts of this case. Here, the privilege is "sought to protect a report bearing on the death of a prisoner." *Agster v. Maricopa County*, 422 F.3d 836, 839 (9th Cir. 2005). As the Ninth Circuit Court of Appeals held in *Agster*:

> Whereas in the ordinary hospital it may be that the first object of all involved in patient care is the welfare of the patient, in the prison context the safety and efficiency of the prison may operate as goals affecting the care offered.

> In these circumstances, it is peculiarly important that the public have access to the assessment by peers of the care provided. Given the demands for public accountability, which seem likely to guarantee that such reviews take place whether they are privileged or not, we are not convinced by the [] argument that such reviews will cease unless kept confidential by a federal peer review privilege. Accordingly, we are unwilling to create the privilege in this case.

*Id.* This Court agrees. *See also Jenkins v. DeKalb County, Georgia*, 242 F.R.D. 652, 653 (N.D. Ga. 2007) (finding "a review of a deceased inmate is not the straightforward evaluation of medical care that occurs in the civilian context"); *Lewis v. County of Henry*, No. 05-0270, 2006 WL 1843336 (S.D. Ind. June 29, 2006) (refusing to create peer review privilege in §1983 prisoner medical malpractice case).

Finally, as pointed out by the Tenth Circuit,

> Rule 501 places responsibility for development of the common law of testimonial privilege on the federal courts. Each decision along the path of the common law is directed by the discrete, underlying facts developed in the record. As decisions accrue, the process is facilitated by the accumulation of experience, but it remains dependent on the factual foundation of each constituent decision. Legislative and rule-making processes, however, are not confined by the same gradual, brick-by-brick progression. Legislatures and rule-making bodies are endowed with tools to marshal evidence, facts, and experience from numerous and diverse sources that can support more dramatic and immediate creation of new rules or modifications of old rules .
> . . .

*In re Qwest Commc'ns Int'l Inc.*, 450 F.3d 1179, 1200 (10th Cir. 2006). The Court heeds the wisdom of this observation, and notes Congress' plain failure to create a federal peer review privilege in the context of suitable legislation, both when it was initially enacted and subsequently amended. *See* The Health Care Quality Improvement Act of 1986, 42 U.S.C. §§ 11101-11152; Pub. L. No. 100-177, §402(c).

### IV. Conclusion

As indicated above, the Court finds that any public or private benefit from keeping

the peer review information or documents confidential in this case is outweighed by the public benefit that flows from full disclosure of all relevant information needed to ascertain the truth of what occurred.  Accordingly,

IT IS HEREBY **ORDERED** that Plaintiffs' Motion to Compel [#106] is **GRANTED in part** with respect to Defendants Furr and Kyambadde.  Defendants Furr and Kyambadde shall produce the Peer Review Documents to Plaintiffs on or before **February 14, 2019**.

IT IS FURTHER **ORDERED** that Defendant Furr shall provide the Peer Review Information during a deposition scheduled at a mutually convenient date, time and location.

IT IS FURTHER **ORDERED** that the Motion to Compel [#106] is **DENIED as moot in part** to the extent it is asserted against Defendants Evans and Elwell.

Dated: February 7, 2019

BY THE COURT:

*[signature]*

Kristen L. Mix
United States Magistrate Judge