# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No.: 1:16-cv-3038-KLM

THE ESTATE OF JEFFREY SCOTT LILLIS,
by and through its co-personal representatives Meghan Lillis and Michele Driscoll,
MEGHAN LILLIS, individually,
C.A.L., individually, a minor, by and through Michele Driscoll as guardian,
C.S.L., individually, a minor, by and through Michele Driscoll as guardian,
A.L., individually, a minor, by and through Robin Booth as next friend and mother,
JORDAN LILLIS, individually,
ASHLEY PERRY, individually;

    Plaintiffs,

v.

CORRECT CARE SOLUTIONS, LLC,
CORRECTIONAL HEALTHCARE COMPANIES, LLC,
GREAT PEAK HEALTHCARE SERVICES, P.C.,
CORRECTIONAL HEALTHCARE PHYSICIANS, P.C.,
BOARD OF COUNTY COMMISSIONERS OF ARAPAHOE COUNTY,
TYLER S. BROWN, in his official capacity as Arapahoe County Sheriff,
DENNIS L. FURR, D.O. individually, and
RUTH KYAMBADDE, RN, individually;

    Defendants.

---

## PLAINTIFFS' MOTION TO COMPEL PRODUCTION PURSUANT TO FED. R. CIV. P. RULE 45

---

Plaintiffs, through undersigned counsel, submit the following Motion to Compel Production Pursuant to Fed. R. Civ. P. 45, and in support thereof state the following:

### I. BACKGROUND

As this Court knows, Plaintiffs previously sought an Order compelling production of documents and deposition testimony relating to proceedings by the Colorado Medical Board and

the Colorado Nursing Board Professional Review Committee ("Nursing Board," both agencies within the Colorado Department of Regulatory Agencies ("DORA"), regarding the December 14, 2014, death of Jeffrey Lillis at the Arapahoe County Detention Facility ("ACDF"). The Colorado Medical Board and Nursing Board Professional Review Committee ("Boards") conducted an inquiry into the care and treatment provided to Mr. Lillis, during the days leading up to his death, by Defendants Ruth Kyambadde and Dennis Furr, former Defendants Robly Evans and Denise Elwell, and Nurses Jason Frank, Anita Brown, and Nancy Winegar.

In its Order dated February 7, 2019, this Court granted Plaintiffs' Motion in part, ruling that there was no recognized federal "peer review" or "deliberative process privilege," and ordering the production of documents related to the Boards' review of Defendants Kyambadde and Dr. Furr. [Doc. 135] at 6-11. The Court denied "as moot" Plaintiff's Motion to Compel documents from the Nursing Board's review of former Defendants Evans and Elwell, as the claims against them had been settled and they were no longer defendants in this case. *Id*. at 11. Although noting that "interested non-party" Nurses Anita Brown, Jason Frank, and Nancy Winegar had filed a Response to the Motion, they are not defendants in this case and the Court's Order did not explicitly address whether Plaintiffs could obtain documents from the Nursing Board's review of these nurses. *See id*.

On February 15, 2019, Plaintiffs' counsel served subpoenas on the Nursing Board requesting the production of the complete case files related to the Board's inquiries into the medical care and treatment given to Mr. Lillis by Nurses Winegar, Frank, Brown, Evans, and Elwell. **Ex. 1**. Counsel attached to the subpoenas a copy of this Court's Order granting Plaintiffs' Motion to Compel documents from the Boards' review of Defendants Dr. Furr and Kyambadde.

In a letter dated February 28, 2019, counsel for the Nursing Board responded to the subpoenas with a number of objections and a refusal to produce any documents covered by the subpoenas. **Ex. 2**. The Board objected to the subpoenas, in conclusory fashion, on several grounds: i) undue burden and expense; ii) relevance; iii) deliberative process privilege; iv) mental process privilege; v) attorney-client privilege; vi) executive privilege/official information privilege; vii) attorney work product doctrine; and viii) the Health Insurance Portability and Accountability Act ("HIPAA"). *Id.* Plaintiffs now seek to compel from the Nursing Board the records sought by the subpoenas, with a few limited exceptions, discussed below.

The issue here involves the exact same subject matter as the aforementioned proceedings before the Boards, and the asserted privileges implicate ones that have already been rejected by the Court as inapplicable in this federal civil rights case. Namely, information and materials from the Boards' proceedings on this matter are relevant to Plaintiffs' 42 U.S.C. § 1983 claims against Defendant Arapahoe County, as these records show similar acts and omissions by almost all the nurses working at ACDF who treated Mr. Lillis immediately before his death, nurses all acting under the protocols and training of the County, and thus forming a strong basis for Plaintiffs *Monell* claim.

Given the relevance of the materials sought, this Court's prior decision that there is no applicable federal statutory or common law privilege for peer review information that would protect these files, and the Nursing Board's failure to meet its burden showing the applicability of other asserted privileges, this Court should compel Defendants to produce all materials in their possession related to the Board's proceedings regarding the death of Mr. Lillis, other than publicly available material and materials *legitimately* protected by the attorney-client privilege or

attorney-work-product doctrine.

### CERTIFICATION OF CONFERRAL

Plaintiffs' counsel has conferred with counsel for the Nursing Board regarding the Board's objections to Plaintiffs' subpoenas. Through conferral, Plaintiffs have clarified that they do not seek any of the following records, if maintained in the Nursing Board's review files for each nurse: Mr. Lillis's autopsy report, medical records from the jail, litigation documents from the instant case, or press reports related to this case. Plaintiffs also do not seek any material protected by the attorney client privilege or the attorney work product doctrine; however, without a privilege log, it is difficult to ascertain what records the Board's counsel asserts are covered by these privileges. As to the Board's HIPAA objection, Plaintiffs will provide a HIPAA-compliant release to obviate that objection. Despite Plaintiffs' counsel's narrowing of the scope of the subpoenas, the Nursing Board maintains its opposition to the relief sought herein. If continuing conferral is more productive, counsel will notify the Court promptly.

### II. STANDARD OF REVIEW

"Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). The rules pertaining to discovery are liberally construed to permit discovery. *See Harris v. Nelson*, 394 U.S. 286, 297 (1969) ("This rule has been generously construed to provide a great deal of latitude for discovery."); *Gomez v. Martin Marietta Corp.*, 50 F.3d 1511, 1520 (10th Cir. 1995) ("The scope of discovery under the federal rules is broad."); *Sanchez v. Matta*, 229 F.R.D. 649, 654 (D.N.M. 2004) ("[T]he federal courts have held that the scope of discovery should be broadly and liberally construed to achieve the full disclosure of all potentially relevant

information."). Liberal discovery rules are essential to the proper functioning of the adversarial system: full development of the facts surrounding a matter furthers "the purpose discovery is intended to serve – advancing the quest for truth." *Taylor v. Illinois*, 484 U.S. 400, 430 (1988).

"Relevancy in the discovery context is broader than admissibility of evidence at trial." *A.H. v. Evenflo Co.*, No. 10-cv-02435-MSK-KMT, 2011 U.S. Dist. LEXIS 93936, at *9 (D. Colo. Aug. 23, 2011); *see also* Fed. R. Civ. P. 26(b)(1) ("Information within this scope of discovery need not be admissible in evidence to be discoverable."); *United States v. Ausbrook*, 1993 U.S. Dist. LEXIS 9896, at *3 (D. Kan. June 4, 1993) ("'[R]elevance' in civil discovery is a much more encompassing standard than 'relevance' in the admissibility of evidence."). "Relevancy is broadly construed and discovery should be permitted if there is any possibility that the information sought may be relevant to the claim or defense of any party." *Martensen v. Koch*, 301 F.R.D. 562, 570-71 (D. Colo. 2014) (citation omitted). "[I]nformation that could be used to impeach a likely witness, although not otherwise relevant to the claims or defenses," is also discoverable. *Id.* at 571.

When a party subject to a discovery request refuses to respond based on an assertion of a specific privilege, that party "has the burden of establishing that the privilege applies." [Doc. 135] at 4 (citing *Zander v. Craig Hosp.*, 743 F. Supp. 2d 1225, 1231-32 (D. Colo. 2010) (citation omitted)). "In establishing the applicability of the privilege, the resisting party must expressly assert it and describe the nature of the purportedly-privileged documents, ordinarily by tendering a privilege log"—a requirement that the Nursing Board has not met here. *Id.* (citing *Zander*, 743 F. Supp. 2d at 1231-32).

As part of the discovery process, litigants may subpoena non-parties or non-party entities

5

with requests for production of documents. Fed. R. Civ. P. 45(a). The recipient of the subpoena may object to the commanded production by "serv[ing] on the party or attorney designated in the subpoena a written objection to inspecting [or] copying… any or all of the materials." Fed. R. Civ. P. 45(d)(2)(B). Following such an objection, "[a]t any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection." Fed. R. Civ. P. 45(d)(2)(B)(i). Rule 45 subpoenas to third parties are "subject to the same standards that govern discovery between the parties." *Infinity Home Collection v. Coleman*, No. 17-MC-00200-MSK-MEH, 2018 WL 1733262, at *2 (D. Colo. Apr. 10, 2018) (citations omitted).

### III. THE NURSING BOARD SHOULD BE COMPELLED TO PRODUCE THE SUBPOENAED DOCUMENTS

**A. Material Contained in the Nursing Board's Records Is Relevant to this Lawsuit**

In this case, information related to the Nursing Board's proceedings involving Nurses Frank, Brown, Winegar, Evans, and Elwell is relevant to all the claims asserted, including the federal 42 U.S.C. § 1983 claims against Defendant Kyambadde and Arapahoe County. The Board of Nursing Professional Review Committee conducted an inquiry into the actions and omissions of each registered nurse who treated Mr. Lillis in the three days immediately preceding his death (December 12-14, 2014). This inquiry covered actions related to Dr. Furr, against whom a claim in this case is still pending, because Nurse Evans consulted with Dr. Furr via telephone about Mr. Lillis's condition on December 13, 2014.

While there are no claims against Nurses Brown, Frank, and Winegar (nor Nurse Elwell anymore) the information from each individual's proceedings before the Boards is relevant to the federal §1983 claims against Ms. Kyambadde and the County. For example, to prove that

6

Defendant Kyamabadde was deliberately indifferent to Mr. Lillis's serious medical needs, Plaintiffs need to show that she knew or it was obvious that Mr. Lillis needed certain medical treatment, and she consciously disregarded a substantial risk of harm in not providing him with this treatment. *Mata v. Saiz,* 427 F.3d 745, 752 (10th Cir. 2005). This showing depends on what Defendant Kyambadde knew and what would have been obvious about Mr. Lillis's condition at the time she failed to provide him with necessary treatment.

At least two of the nurses whose Nursing Board records are at issue, Nurses Winegar and Elwell, directly interacted and communicated with Defendant Kymbadde regarding Mr. Lillis. It is highly likely that the comprehensive information Nurses Winegar and Elwell would have provided the Nursing Board, during its review of their actions and omissions in treating Mr. Lillis, necessarily included their interactions with, and observations of, Defendant Kyambadde as she interacted with Mr. Lillis. Information from Nurses Winegar and Elwell related to Defendant Kyambadde's treatment of Mr. Lillis immediately before his death, as well as these nurses' observations of Mr. Lillis's condition at that time, is relevant to establishing i) whether Defendant Kyambadde knew, or that it was obvious, that Mr. Lillis needed certain medical treatment, and ii) whether Defendant Kyambadde consciously disregarded a substantial risk of harm in not providing Mr. Lillis with this treatment.

Likewise, material relating to the care and treatment of Mr. Lillis immediately before his death, contained in the Nursing Board's records for all five of these nurses, is relevant to Plaintiffs' *Monell* claim against Defendant Arapahoe County. The Board's review likely elicited information showing that all of these involved nurses failed to provide adequate treatment to Mr. Lillis in the same way (such as not securing necessary higher level care consistent with their

7

gatekeeper duties) and for the same reasons, providing a strong basis to believe that Arapahoe County's policies, practices, or training of its nurses directly caused such failures. For instance, based on the actions and omissions of each of these nurses, the Board may have found evidence that, at least during the time period when Mr. Lillis died, nurses at ACDF were allowed, and even encouraged or trained, to practice outside the scope of their licenses. The Board may have found evidence that ACDF nurses were trained by Arapahoe County, or it was the custom of ACDF, to not contact higher level providers unless there was an immediate emergency, even in cases like Mr. Lillis's where such higher-acuity evaluation would have been necessary to prevent serious injury or death. Based on its inquiry about the nurses whose records are at issue, and information it likely gathered, the Board may have found evidence of significant understaffing at ACDF, which is relevant to Plaintiffs' allegations that ACDF deliberately understaffs the jail's medical staff to cut costs, and that Arapahoe County (and its contracted medical provider, Defendants Correct Care Solutions et al.) knew about such understaffing long before Mr. Lillis's death. In the same way, the Board could have found evidence of a widespread custom, practice, and habit, known and tolerated by Arapahoe County, of ACDF nurses treating symptoms reported by inmates as faked, or not serious enough to warrant action, until the inmate/detainee could prove otherwise. This type of evidence--showing obvious and illegal failures by ACDF to adequately train its nurses, and Arapahoe County's tolerance and even development of known widespread and illegal practices or custom at ACDF--is likely contained in the Board's case files. Critically, these policies, practices, and/or customs all played a significant role in Arapahoe County's and Nurse Kyambadde's failure to provide Mr. Lillis adequate care and treatment for his known serious medical needs, leading to his death.

8

For the same reason, if most of these nurses were disciplined by the Nursing Board for practicing outside their scope—and Plaintiffs have reason to believe the Board is considering such discipline—yet Arapahoe County concluded that they did not violate any policies of ACDF and acted consistent with their training, this fact, in and of itself, tends to show that Arapahoe County's training and/or policies governing the nurses at ACDF is dangerously deficient. Such information is thus relevant to Plaintiffs' *Monell* claim.

Lastly, the records contained in the Nursing Board files of the five nurses at issue here are relevant as potential impeachment evidence. If any statement by any of these nurses made during the Board's proceedings regarding Mr. Lillis's death is inconsistent with a statement he or she made in this action, the inconsistent statement would be admissible at trial to impeach the declarant, and is thus discoverable. *See Martensen*, 301 F.R.D. at 571.

Plaintiffs therefore request that this Court order the production of all records contained in the Nursing Board's files for Nurses Winegar, Brown, Frank, Evans, and Elwell relating to Mr. Lillis's death, with the narrow exceptions described in the following section.

**B. Plaintiffs Have Narrowed the Scope of Their Subpoenas to Overcome the Board's Burden-related Objections**

In addition to its relevance objection, the Nursing Board raises a conclusory objection to complying with Plaintiffs' Rule 45 subpoenas on the basis of "undue burden and expense." **Ex. 2** at 2. However, Plaintiffs have clarified through conferral that Plaintiffs are not seeking many of the records likely contained in the Board's records for these nurses, and thus the burden on the Nursing Board in complying with the subpoenas is significantly less than it asserts.

Through conferral, undersigned counsel has made it clear that Plaintiffs do not seek the records that they already have through litigation, including: Mr. Lillis's autopsy report, medical

9

records from ACDF, litigation documents from the case, press reports related to this case, or other publicly available documents. Counsel has also made it clear that Plaintiffs do not seek information in the Board's records that is *legitimately* protected by the attorney-client privilege or the attorney-work-product doctrine. However, given the blanket assertion of these privileges in the Board's Letter, **Ex. 2**, and the lack of an accompanying privilege log, it is difficult for Plaintiffs to determine whether a legitimate assertion of these privileges has been made. At this stage it is impossible for Plaintiffs to guess which documents the Board argues are protected by attorney-client and attorney-work-product privileges. Similarly, it is impossible to determine how the Board thinks these privileges apply. *E.g.*, *Fourhorn v. City & Cty. of Denver*, No. 08-cv-1693-MSK-KLM, 2009 WL 2407569, at *3 (D. Colo. Aug. 3, 2009) (Mix, J.) (quoting *S.E.C. v. Nacchio*, No. 05-cv-480-MSK-CBS, 2009 WL 211511, at *6 (Jan. 29, 2009)). Plaintiffs thus respectfully request that if this Court grants Plaintiffs' motion to compel the Nursing Board to produce some or all of the records sought for the five nurses at issue and also require the Nursing Board to produce a privilege log as to any document withheld by the Board on the basis of attorney-client or work-product privilege.

The Board has similarly failed to meet its burden to successfully assert a burden- or expense-related objection to Plaintiffs' Rule 45 subpoenas. "Unless the challenged discovery is unduly burdensome on its face, a party seeking protection based upon undue burden or expense must submit affidavits or otherwise explain in detail the nature and extent of the claimed burden or expense." *Colo. Mills, LLC v. Phila. Indem. Ins. Co.*, No. 12-cv-01830-CMA-MEH, 2013 U.S. Dist. LEXIS 53467, at *15 (D. Colo. Apr. 15, 2013).

The Board's conclusory assertion here that the subpoenas would cause it undue burden or

expense does not satisfy its burden to show with particularity why compliance with the subpoenas would be unduly burdensome. With regard to the Board's burden-related objection that some of its records may be contained in other records, that alleged fact alone does not mean the records are not discoverable. *See Pulsecard, Inc. v. Discover Card Servs.*, 168 F.R.D. 295, 305-06 (D. Kan. 1996); *accord Grace Bros. v. Siena Holdings, Inc.*, Civil Action No. 184-CC, 2009 Del. Ch. LEXIS 240, at *2-3 (Ch. June 2, 2009) ("[D]uplicative requests will be forbidden [only] when the objecting party shows that the discovery request is fully duplicative and meant to harass the producing party.").

Notably, the Boards' files for Dr. Furr and Nurse Kyambadde, which Plaintiffs have already obtained from Defense counsel pursuant to this Court's previous Order, are not so extensive as to amount to an "undue burden." There is no reason to believe that the files of the other nurses at issue are significantly more voluminous. And even if they are, "[t]he mere fact that compliance with an inspection order will cause great labor and expense or even considerable hardship and possibility of injury to…the party from whom discovery is sought does not of itself require denial of [a] motion" to compel. *Snowden v. Connaught Labs., Inc.*, 137 F.R.D. 325, 332-33 (D. Kan. 1991). Rather, "Rule 26(c) speaks of 'undue burden or expense" and discovery should be allowed unless the hardship is unreasonable in the light of the benefits to be secured from the discovery." *Id.*

Plaintiffs have a compelling need for the information contained in these files. Mr. Lillis's ACDF medical records are notably sparse, even with respect to crucial medical information. From depositions and review of the Boards' files for Nurse Kyambadde's and Dr. Furr, a significant amount of information about Mr. Lillis's treatment at ACDF immediately before his

11

death is not included in his jail medical record. For example, Mr. Lillis's ACDF records contain scant information about the content of Nurse Evans's December 13th call to Dr. Furr regarding Mr. Lillis's condition, made the day before Mr. Lillis died. The content of the conversation is memorialized only in testimony of Defendant Furr and Nurse Evans. As another example, Mr. Lillis's ACDF records do not indicate whether Nurse Kyambadde had learned from other nurses that Mr. Lillis had previously complained about coughing up blood. As such, quite possibly there are relevant records in the Nursing Board's files that are either not contained in ACDF's records or contradict self-serving statements made by the involved individuals in the ACDF records. Because the information in these records is related to Defendants' care and treatment of Mr. Lillis, or lack thereof, during the days before he died, it is clearly relevant to the claims in this action. Defendants in this lawsuit should not be permitted to benefit from heavily involved nurses' lack of thorough or forthright record-taking practice.

**C. The Board Has Not Met Its Burden of Showing That the "Deliberate Process," the "Mental Process" or the "Executive Privilege/Official Information" Privileges Apply**

The deliberative process privilege (and its equivalents or analogues) asserted by the Nursing Board do not protect the subpoenaed files in this civil rights case. The Board raises a number of privilege-based objections to Plaintiffs' Rule 45 subpoenas with a single sentence, writing: "[A]s a governmental agency making disciplinary decisions, various documents contained in the Board file are subject to the deliberative process privilege, as well as additional privileges, such as the mental process privilege, attorney-client privilege, executive privilege/official information privilege, attorney work product doctrine and HIPAA." **Ex. 2.** The Board's letter contains no further discussion of to which documents these privileges purportedly apply, no discussion of the basis for applying these privileges, no description of the purportedly

protected documents, and no privilege log. *See id.* The Board's assertion of these privileges, with no supporting privilege log, is thus far too vague and conclusory to meet the Board's burden to show the privileges apply to any documents contained in the Board's records for these nurses. *See Zander*, 743 F. Supp. 2d at 1231-32.

The Board's assertion of the "deliberative process privilege," the "mental process privilege," and the "executive privilege/official information privilege" amounts to the assertion of one privilege known by a number of different names, all boiling down to the qualified deliberative process privilege. *Fourhorn v. City & Cty. of Denver*, No. 08-cv-01693, 2009 WL 2407569, at *1 (D. Colo. Aug. 3, 2009) (Mix, J.) ("The [deliberate process] privilege, also known as the governmental, executive or official information privilege, protects advisory opinions, recommendations and deliberations used by the government in making decisions and policies, if "[t]he information [is]…predecisional and deliberative." (citation omitted)).[1]

As this Court has recognized, the deliberative process privilege is a *qualified* privilege, "a form of executive privilege that allows the government to withhold documents which reveal 'advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated.'" *Gambina v. Fed. Bureau of Prisons*, No. 10-CV-02376-MSK-KLM, 2012 WL 4040335, at *3 (D. Colo. Sept. 12, 2012) (Mix., J.) (quoting *In re Sealed Case,* 121 F.3d 729, 737 (D.C.Cir.1997)). It is not meant to be a blanket privilege, thrown over governmental activity to shield wrongdoing from public scrutiny, or from

---

[1] The mental process privilege is "inextricably intertwined" with the deliberative process privilege. *Denver First Church of Nazarene v. Cherry Hills Vill.*, No. 05-CV-02463-WDM-MEH, 2006 WL 7354733, at *7 (D. Colo. July 19, 2006) (quoting *United States v. Lake County Bd. of Comm'rs,* 233 F.R.D. 523, 527 (N.D. Ind. 2005) (internal quotation marks omitted). The analysis of each privilege is the same. *Id*.

the scrutiny of litigants seeking discoverable information to aid the courts in their truth-seeking function. *E.g.*, *Equal Employment Opportunity Comm'n v. Bok Fin. Corp.*, No. 11-1132 RB/LFG, 2013 WL 12040729, at *3 (D.N.M. Jan. 2, 2013) (citations omitted) ("This privilege is not absolute and requires the Court to conduct a balancing process, tipping the scales in favor of disclosure when public interest in accurate judicial determination outweighs public interest in assuring the free flow of opinions so as to promote effective governmental functioning.").

To fall under the protection of the deliberative process privilege, materials must be both predecisional and deliberative. *Id*. (citation omitted). Unless inextricably interwoven with deliberative sections of protected documents, purely factual material is not protected. *Id*. (citation omitted). Much like the peer review privilege addressed in this Court's prior Order, "[c]ourts have consistently found that the [deliberative process] privilege is outweighed by the interest in disclosure where a case is based on alleged violations of federally-protected civil rights." *Hinsdale v. City of Liberal, Kansas*, No. 96-1249-FGT, 1997 WL 557314, at *1 (D. Kan. Aug. 27, 1997) (citations omitted).

Accordingly, this privilege does not protect the factual material the Nursing Board gathered in conducting its proceedings related to Nurses Winegar, Frank, Evans, Elwell, and Brown. This material should therefore be disclosed. *Gambina v. Fed. Bureau of Prisons*, No. 10-CV-02376-MSK-KLM, 2012 WL 4040335, at *4 (D. Colo. Sept. 12, 2012) (Mix, J.) (finding the vast majority of the purportedly privileged document to be factual, not deliberative, and thus not protected by the deliberative process privilege). To the extent the Board's case files on these nurses contain non-factual material, the Board has not made a showing of any kind that these materials are both predecisional and deliberative. *See* **Ex. 2**. The conclusory assertion that

"various documents" are protected by this privilege, without any discussion of how they might be predecisional and deliberative, is not sufficient to meet the Board's burden.

Even if the Board had provided a more specific list of documents purportedly protected by this privilege, and even if the Board had discussed these documents' alleged predecisional and deliberative nature, the privilege asserted "is a qualified [one,] which can be overcome by a sufficient showing of need." *Gambina*, 2012 WL 4040335, at *3 (citing *In re Sealed Case*, 121 F.3d 729, 738 (D.C. Cir. 1997). Here, as discussed above, the material sought is relevant to the claims against the individual Defendants remaining in this case, as well as the entity claims against Defendant County. This case involves serious allegations of deliberately indifferent medical care at a local county jail, ACDF. It also involves several alleged systemic failures by the governmental Defendant, including, among others, tolerance or even encouragement of ACDF and contractor nurses' customs of practicing outside the scope of their licenses, assuming that inmates are faking their symptoms, and refusing to involve higher-level providers for obviously and emergently sick people. It also involves an allegation that the Defendant County and its private medical contractor knowingly and chronically understaffed the jail to save money, directly leading to Mr. Lillis's death. The adequacy, or lack thereof, of medical care at a taxpayer-funded jail is a matter of public importance. Particularly in the context of a county jail—where the facility must provide medical care for a large number of local citizens who are, for the time being, detainees or inmates—its ability and willingness to do so is of great public importance.

Plaintiffs have a demonstrable need for information showing why Mr. Lillis's caregivers acted the way they did, what they told each other about his medical crisis as it unfolded, and the

alleged policies, practices, and customs that evidence the "systemic failures" of the County in this case. *Cf. Fourhorn*, 2009 WL 2407569, at *4 (holding that the deliberative process privilege "must yield to Plaintiffs' need for documents that may potentially speak to a material issue in their case," where the § 1983 Plaintiffs sought materials relevant to their need to prove deliberate indifference by Defendant governmental entity related to the actions of its individual police officers and the entity's own alleged systemic failures).

For these reasons, the Nursing Board's assertion of the deliberative process privilege cannot overcome Plaintiffs' entitlement to discover the relevant records maintained by the Board related to Mr. Lillis's death.

## CONCLUSION

For the reasons set forth, Plaintiffs respectfully request that this Court enter an Order compelling Defendants to immediately produce documents responsive to Plaintiffs' Rule 45 subpoenas, as described above, and for any other relief that this Court deems appropriate.

Dated this 12th day of March 2019.

| | |
|---|---|
| */s/ Anna Holland Edwards* | */s/ Liana Orshan* |
| Anna Holland Edwards | David Lane |
| Erica Grossman | Liana Orshan |
| HOLLAND, HOLLAND EDWARDS & GROSSMAN, LLC | KILLMER, LANE & NEWMAN, LLP |
| 1437 High Street | 1543 Champa Street, Suite 400 |
| Denver, CO 80218 | Denver, CO 80202 |
| 303-860-1331 | 303-571-1000 |
| anna@hheglaw.com | lorshan@kln-law.com |
| *Attorneys for Plaintiff Estate of Jeffrey Scott Lillis, C.A.L., C.S.L., A.L., Jordan Lillis and Ashley Perry* | *Attorneys for Plaintiff Meghan Lillis* |

# CERTIFICATE OF SERVICE

I certify that on this 12th day of March 2019, I filed the foregoing via CM/ECF, which will generate a notice and service on the following:

| | |
|---|---|
| C. Gregory Tiemeier, Esq.<br>Daniel Mauk, Esq.<br>TIEMEIER & STICH, P.C.<br>gtiemeier@tslawpc.com<br>dmauk@tslawpc.com | Writer Mott, Esq.<br>Daniel C. Perkins<br>Rebecca Taylor<br>ARAPAHOE COUNTY ATTORNEY'S OFFICE<br>WMott@arapahoegov.com<br>DPerkins@arapahoegov.com<br>Rtaylor@arapahoegov.com |
| Todd Stalmack<br>Eric Schoonveld<br>HALL PRANGLE & SCHOONVELD, LLC<br>tstalmack@hpslaw.com<br>eric@hpslaw.com | Edward J. McNelis, III<br>Christopher Quirk<br>SANDS ANDERSON<br>cmcnelis@sandsanderson.com<br>cquirk@sandsanderson.com |

*s/ Brooke Thiele-LaForest*
Brooke Thiele-LaForest, Paralegal