IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 16-cv-03038-KLM

THE ESTATE OF JEFFREY SCOTT LILLIS, by and through its co-personal representatives
Meghan Lillis and Michele Driscoll,
MEGHAN LILLIS, individually,
C.A.L., individually, a minor, by and through Michele Driscoll as guardian,
C.S.L., individually, a minor, by and through Michele Driscoll as guardian,
A.L., individually, a minor, by and through Robin Booth as next friend and mother,
JORDAN LILLIS, individually, and
ASHLEY PERRY, individually,

    Plaintiffs,

v.

BOARD OF COUNTY COMMISSIONERS OF ARAPAHOE COUNTY;
TYLER S. BROWN, in his official capacity as Arapahoe County Sheriff, and
RUTH KYAMBADDE, RN, individually;

    Defendants.
_____

**ORDER**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on Defendants' **Motion for Summary Judgment** [#173][1] (the "Motion"). Plaintiff filed a Response [#185] in opposition to the Motion, and Defendants filed a Reply [#192]. The Court has reviewed the Motion, Response, Reply, the entire case file, and the applicable law, and is sufficiently advised in the premises.[2] For

---

[1] "[#173]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). This convention is used throughout this Order.

[2] This case has been referred to the undersigned for all purposes pursuant to D.C.COLO.LCivR 40.1(c) and 28 U.S.C. § 636(c), on consent of the parties. See [#31, #33].

-1-

the reasons set forth below, the Motion [#173] is **GRANTED in part and DENIED in part**.

## I. Background[3]

During the relevant time underlying this lawsuit, Jeffrey Lillis ("Lillis") was a pretrial detainee at the Arapahoe County Detention Facility ("ACDF").[4] He was transferred to the infirmary there on the morning of Friday, December 12, 2014, after complaining to a pod nurse that he was not feeling well and was running a fever. *Motion* [#173] at 2; *Response* [#185] at 1. He died in his cell in the infirmary on the evening of December 14, 2014. *Id.* Defendant Ruth Kyambadde ("Kyambadde") is a Registered Nurse who was working at ACDF's infirmary unit on December 14 at the time Mr. Lillis died. *Decl. of Kyambadde* [#173-2] ¶ 1. Based on the events occurring at ACDF in the afternoon and evening of December 14, the remaining claims in this case are (1) a claim under the Fourteenth Amendment for deliberate indifference to medical needs against Defendant Kyambadde in her individual capacity and (2) a *Monell* claim against the Board of County Commissioners of Arapahoe County and Arapahoe County Sheriff Tyler Brown (collectively, the "County"). The factual details provided by the parties are examined in-depth in the Analysis section below.

## II. Standard of Review

---

[3] "When reviewing a motion for summary judgment, the Court must view the evidence in the light most favorable to the nonmoving party." *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990). The Court recites only undisputed facts here.

[4] Throughout the briefs, the parties refer to Mr. Lillis as an "inmate" and do not mention whether he was a pretrial detainee. The Court has found two references to Mr. Lillis as a pretrial detainee on the docket. *See Am. Compl.* [#118] ¶ 35; *Sched. Order* [#54] at 4. However, Defendants did not explicitly admit this fact as undisputed in either instance. Regardless, given that there appears to be no dispute between the parties that the Fourteenth Amendment governs the deliberate indifference claim in this lawsuit, it appears clear that Mr. Lillis was indeed a pretrial detainee. *See, e.g., Blackmon v. Sutton*, 734 F.3d 1237, 1244 (10th Cir. 2013).

The purpose of a motion for summary judgment pursuant to Fed. R. Civ. P. 56 is to assess whether trial is necessary. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Pursuant to Fed. R. Civ. P. 56(a), summary judgment should be entered if the pleadings, the discovery, any affidavits, and disclosures on file show "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." An issue is genuine if the evidence is such that a reasonable jury could resolve the issue in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it might affect the outcome of the case under the governing substantive law. *Id.*

The burden is on the movant to show the absence of a genuine issue of material fact. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir. 1998) (citing *Celotex*, 477 U.S. at 323). When the movant does not bear the ultimate burden of persuasion at trial, the "movant may make its prima facie demonstration [of the absence of a genuine issue of material fact] simply by pointing out to the [C]ourt a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Id.* at 671. If the movant carries the initial burden of making a prima facie showing of a lack of evidence, the burden shifts to the nonmovant to put forth sufficient evidence for each essential element of his claim such that a reasonable jury could find in his favor. *See Anderson*, 477 U.S. at 248. The nonmovant must go beyond the allegations and denials of his pleadings and provide admissible evidence, which the Court views in the light most favorable to him. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Panis v. Mission Hills Bank, N.A.*, 60 F.3d 1486, 1490 (10th Cir. 1995) (citing *Celotex*, 477 U.S. at 324). Conclusory statements based merely on conjecture, speculation, or subjective belief are not competent summary

judgment evidence. *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004). The nonmoving party's evidence must be more than "mere reargument of [his] case or a denial of an opponent's allegation" or it will be disregarded. *See* 10B Charles Alan Wright et al., *Federal Practice and Procedure* § 2738 (4th ed. 2017).

Only documents that meet the evidentiary requirements of Fed. R. Civ. P. 56 may be considered for purposes of summary judgment. Rule 56(c) provides that:

> (1) A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials[.]
> . . .
> (3) Materials Not Cited. The court need consider only the cited materials, but it may consider other materials in the record.
> (4) Affidavits or Declarations. An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

Fed. R. Civ. P. 56(c)(1)-(4).

### III. Analysis

**A.   Qualified Immunity**

Defendant Kyambadde asserts that she is entitled to qualified immunity. "The doctrine of qualified immunity shields government officials performing discretionary functions from liability for damages 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Boles v. Neet*, 486 F.3d 1177, 1180 (10th Cir. 2007) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Resolving the question of immunity involves a two-pronged

test: (1) a court must decide whether the facts that a plaintiff has shown make out a violation of a constitutional right and (2) a court must decide whether the right at issue was "clearly established" at the time of the defendant's alleged misconduct. *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001) (holding that although a qualified immunity determination involves a two-part inquiry, the prongs may be reviewed in any order).

### 1. Whether There Was a Constitutional Violation

The Tenth Circuit has stated that a pretrial detainee's Fourteenth Amendment deliberate indifference claim of inadequate medical care should be evaluated pursuant to the standards set by the United States Supreme Court in *Estelle v. Gamble*, 429 U.S. 97 (1976), which concerned a convicted prisoner's Eighth Amendment deliberate indifference claim. *See Blackmon v. Sutton*, 734 F.3d 1237, 1244 (10th Cir. 2013) (stating that pretrial detainees are owed "at least the same standard of care prison officials owe convicted inmates"). Because detainees "must rely on prison authorities to treat [their] medical needs," the Supreme Court has held that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." *Estelle*, 429 U.S. at 103-04 (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). The test for deliberate indifference is both objective and subjective, in that a detainee must establish that: (1) he was deprived of a medical need that is, objectively, "sufficiently serious," and (2) that the defendant subjectively knew of and disregarded "an excessive risk to [the detainee's] health or safety." *Farmer v. Brennan*, 511 U.S. 825, 834, 837 (1994).

With respect to the objective component, "the test is met if the harm suffered rises

to a level 'sufficiently serious' to be cognizable under the Cruel and Unusual Punishment Clause' of the Eighth Amendment." *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009). Further, "it is the harm claimed by the prisoner that must be sufficiently serious to satisfy the objective component, and not solely 'the symptoms presented at the time the prison employee had contact with the prisoner.'" *Id.* (quoting *Mata v. Saiz*, 427 F.3d 745, 752-53 (10th Cir. 2005)). Defendant Kyambadde does not contest the objective component of the two-part test. She does, however, contest the subjective component. *Motion* [#173] at 11-16.

With respect to the subjective component, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [s]he must also draw the inference." *Farmer*, 511 U.S. at 837. Further, the "symptoms displayed are relevant . . . to the subjective component of the test: were the symptoms such that a prison employee knew the [specific] risk to the prisoner and chose (recklessly) to disregard it?" *Mata v. Saiz*, 427 F.3d 745, 753 (10th Cir. 2005). "Significantly, this level of intent can be demonstrated through circumstantial evidence." *Id.* at 752. "A factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Farmer*, 511 U.S. at 842. In this case, in order to prevail, Plaintiffs must prove that Defendant Kyambadde knew of and disregarded a substantial risk of death or serious injury to Mr. Lillis. *See, e.g., Estate of Booker v. Gomez*, 745 F.3d 405, 430-31 (10th Cir. 2014) (noting a genuine issue of material fact regarding the cause of an inmate's death, including whether a delay in medical attention caused the death).

Defendant Kyambadde provides evidence describing her actions relating to Mr. Lillis as follows. On December 14, Defendant Kyambadde's shift at the inpatient medical unit

of the ACDF began at 2:00 p.m. *Decl. of Kyambadde* [#173-2] ¶ 2. When she began her shift, she was told by the on-duty nurse, Nancy Winegar ("Winegar"), that Mr. Lillis, whom Defendant Kyambadde had never met or had prior knowledge of, had been transferred to the medical unit because of cold- or flu-like symptoms, and that he had eaten his lunch and come out of his cell during dayroom time. *Id.* ¶¶ 3-5. Based on this report, Defendant Kyambadde "did not view Mr. Lillis as a critically ill patient." *Id.* Her first interaction with Mr. Lillis occurred around 4:00 p.m., while she was delivering medications to inmates during the afternoon medication rounds. *Id.* ¶ 6. Mr. Lillis came to his cell door and asked for his medication. *Id.* Defendant Kyambadde checked his medication record and informed him that he was not scheduled to receive any medications at that time. *Id.* Mr. Lillis did not report any medical issues or symptoms to her during this brief conversation. *Id.*

Around 4:45 p.m., Deputy Jarrod Crist ("Crist") told her that Mr. Lillis had complained about liver pain, which was the first time she learned about any medical complaints made by Mr. Lillis beyond his cold/flu-like symptoms. *Id.* ¶ 7; *Aff. of Crist* [#173-7] ¶ 4. She then went to Mr. Lillis's cell with Deputy Crist to check on him. *Depo. of Kyambadde* [#173-5] at 88. Mr. Lillis asked for withdrawal and anxiety medications but did not mention liver pain or that he was feeling ill. *Decl. of Kyambadde* [#173-2] ¶ 8. As a result of his request for withdrawal medication, Defendant Kyambadde went to investigate whether Mr. Lillis had been out of the facility recently where he could have accessed some drugs; she learned from a deputy that Mr. Lillis had recently returned on a writ from Denver. *Id.* ¶ 9. She then left the medical inpatient unit and went to the medical clerk's office to see if she could locate his intake forms and see if there were any information about potential drug use to help her determine how best to treat Mr. Lillis, although ultimately she was unable to find

the correct form. *Id.*

Later, shortly after dinner was served, Defendant Kyambadde was told by a deputy that Mr. Lillis was not feeling well and wanted to see a nurse. *Id.* ¶ 10. At approximately 6:55 p.m., she responded to Mr. Lillis's cell to assess him and take his "vitals." *Id.*; *Cell Video* [#188] at 6:55. Plaintiff's temperature and oxygen saturation levels were within normal ranges. *Decl. of Kyambadde* [#173-2] ¶ 10. She tried three times to get his blood pressure and pulse, but the machine provided an error message each time. *Id.* Mr. Lillis told her that he had coughed up some blood the day before, although he was not coughing at all at this time. *Id.* ¶ 11. This was the first time Defendant Kyambadde learned that he had coughed up blood. *Id.* She then left his cell and returned with Gatorade and an emesis basin, asking Mr. Lillis to call her if he coughed up any more blood so she could examine it, because she needed more information about what the blood looked like before she could call a doctor about the symptom. *Id.*

After giving Mr. Lillis the basin, she left his cell again to get her manual blood pressure cuff so she could again try to obtain a blood pressure reading. *Id.* ¶ 12. While running this errand, she ran into Nurse Denise Elwell ("Elwell"), who had cared for Mr. Lillis the previous night. *Id.* Nurse Elwell told Defendant Kyambadde that Mr. Lillis was reported to have coughed up blood and that the on-call doctor prescribed a medication that they did not have on hand. *Id.* Defendant Kyambadde then went into the facility's in-house pharmacy to see if she could find the medication. *Id.*

About this time, Deputy Barbara Dube ("Dube") told Defendant Kyambadde that Mr. Lillis was on the floor of his cell, so Defendant Kyambadde asked the deputy to rewind the cell video to see what had happened and how he had gotten on the floor. *Id.* ¶ 13.

Defendant Kyambadde asserts that it was not clear to her from Deputy Dube's statement or from the video that Mr. Lillis was experiencing a medical emergency, but she went to his cell immediately after seeing the video to check on him and to take his blood pressure. *Id.* When she entered the cell with Deputy Crist, Mr. Lillis was non-responsive, so she "began CPR and a man down emergency was aired and emergency response was requested." *Id.* ¶ 14. She was "then relieved by a deputy" so she "could retrieve the AED [i.e, Automated External Defibrillator] machine," and the paramedics arrived shortly afterward. *Id.*

Plaintiffs augment Defendants' recitation of the facts by highlighting evidence that Defendant Kyambadde, at a minimum, knew the following when she asked to review the video of Mr. Lillis's fall: (1) About 2:00 p.m., when Defendant Kyambadde came on duty, she received a Health Services Unit Shift Report stating that Mr. Lillis had been in the medical unit for four days with upper respiratory symptoms and fever and had a recent pulse of 121 and an oxygen saturation level of 91%. *Shift Reports* [#185-5] at 3. (2) During the 4:00 p.m. hour, Defendant Kyambadde learned (a) from Mr. Lillis that he was not feeling well and that he was requesting medication, *Medical Records* [#185-2] at 1; *Depo. of Kyambadde* [#185-15] at 89, (b) from Deputy Crist that Mr. Lillis was looking gray and complaining of liver pain, *Depo. of Crist* [#185-16] at 35, (c) from her own observation that Mr. Lillis was looking anemic, *Depo. of Kyambadde* [#185-15] at 96, and (d) from Mr. Lillis's Medical Administration Record ("MAR") that he had been on a respiratory infection protocol since December 12, including, among other medications, 1000 mg of acetaminophen and 400 mg of ibuprofen twice daily, *Medical Records* [#185-2] at 1, 10. (3) Around 5:00 p.m., Defendant Kyambadde learned from Mr. Lillis that he was requesting

anxiety medication and to be put on withdrawal protocol, that he had used drugs in the past but not recently, that he could not provide a reason why he needed to be on the withdrawal protocol, and that he appeared to be in a little pain. *Depo. of Kyambadde* [#185-15] at 89; *Depo. of Crist* [#185-16] at 82-83. (4) Around 6:56 p.m., Mr. Lillis informed Defendant Kyambadde that he had been coughing up blood the night before, and during the next few minutes, she realized she was unable to obtain a blood pressure reading or a pulse from Mr. Lillis. *Depo. of Kyambadde* [#185-15] at 34, 36. Plaintiffs interpret the cell video at this time to show that Mr. Lillis was "lethargic, having trouble breathing, and barely able to sit up." *Cell Video* [#188] at 6:55-7:03; *see also Depo. of Crist* [#185-16] at 88 (stating that Mr. Lillis was lethargic rather than restless). (5) From about 7:11-7:14 p.m., Defendant Kyambadde returned to the cell, where Mr. Lillis was "breathing very hard, in obvious pain, and unsteady," as interpreted by Plaintiffs from the video. *Cell Video* [#185-1] at 7:11-14. (6) At about 7:30 p.m., Defendant Kyambadde was told by a deputy that Mr. Lillis had fallen off the toilet. *Medical Records* [#185] at 1. She "asked the deputy to rewind the tape to see how [Mr. Lillis] happened to fall off the toilet and . . . [she] noted . . . that he was crawling to his bed but then lay down on his left side." *Mortality Review* [#185-11] at 8. (7) At 7:41 p.m., approximately 11 minutes after she was informed of Mr. Lillis's fall, she entered his cell with a deputy to check on him. *Cell Video* [#185-1] at 7:41.

In *Self v. Crum*, 439 F.3d 1227, 1231 (10th Cir. 2006), the Tenth Circuit explained that it "recognize[s] two types of conduct which may constitute deliberate indifference in a prison medical case: (1) a medical professional failing to treat a serious medical condition properly; and (2) a prison official preventing an inmate from receiving medical treatment or denying access to medical personnel capable of evaluating the inmate's condition." The

pertinent question here is whether Defendant Kyambadde was subjectively aware of the risk of death or serious injury to Mr. Lillis and recklessly ignored it when she delayed (or denied) his access to appropriate medical care.  *See, e.g.*, *Kellum v. Mares*, 657 F. App'x 763, 770 (10th Cir. 2016) (explaining that a deliberate indifference claim was stated where the "specific medical symptoms and vital signs presented to [the defendant] . . . indicated a need for further assessment, testing, diagnosis, and emergency medical treatment"). Based on the undisputed evidence, this case is not about whether Defendant Kyambadde took no action to treat Mr. Lillis; rather, the issue is whether she took constitutionally inadequate action based on everything she knew about Mr. Lillis's recent medical history and current health needs.

Ultimately, taking the evidence in a light most favorable to Plaintiffs as the nonmoving party, *see Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990), the Court concludes that Plaintiffs have provided sufficient evidence on which a reasonable jury could find that Defendant Kyambadde violated Mr. Lillis's constitutional rights.  "'A [deliberate indifference] claim is . . . actionable only in cases where the need for additional treatment or referral to a medical specialist is obvious.'"  *Estate of Martinez v. Taylor*, 176 F. Supp. 3d 1217, 1227 (D. Colo. Mar. 31, 2016) (quoting *Self*, 439 F.3d at 1232).  Here, based on the evidence provided by Plaintiffs, Mr. Lillis's need for additional medical treatment was glaringly obvious at the time when Defendant Kyambadde heard that Mr. Lillis had fallen off of the toilet and was lying on the floor.  Coupled with the knowledge of his current medical state, the fall indicated a serious risk to Mr. Lillis's health.  Defendant Kyambadde delayed going to Mr. Lillis's aid, instead watching the tape of him falling from the toilet and arriving at his cell approximately

ten minutes after his fall, by which time he was on the verge of death. *See Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001) ("[A] delay in medical care 'only constitutes [a deliberate indifference] violation where the plaintiff can show that the delay resulted in substantial harm.'") (quoting *Oxendine v. Kaplan*, 241 F.3d 1272, 1276 (10th Cir. 2001)); *see also Mata*, 427 F.3d at 751 ("A prisoner may satisfy the subjective component by showing that defendants' delay in providing medical treatment caused either unnecessary pain or a worsening of [his] condition."); *Kellum*, 657 F. App'x at 770 ("Even a brief delay may be unconstitutional.").

If believed by a jury, Plaintiffs' evidence adequately shows that Defendant Kyambadde acted with deliberate indifference and "knew of and disregarded the excessive risk to [Mr. Lillis'] health that could result from the delay." *See Sealock v. Colorado*, 218 F.3d 1205, 1210 (10th Cir. 2000) (finding that the nurse defendant was deliberately indifferent because he was "present when appellant displayed symptoms consistent with a heart attack" and did not take action). Seen from the point of view of Defendant Kyambadde, the evidence could demonstrate, at worst, inadvertent or negligent failure to provide appropriate medical care, rather than deliberate indifference to a serious medical need. *See Ramos*, 639 F.2d at 575. Seen from the point of view of Plaintiffs, however, the evidence could demonstrate, at worst, deliberate indifference to a serious medical need, rather than inadvertent or negligent failure to provide appropriate medical care. *See id.* The Court need not further belabor the analysis here. From the parties' recitation of the facts, it is clear that there are a myriad number of issues of material fact from which a jury could find for either party. Accordingly, given that material factual issues remain which

must be resolved by a jury, the Motion [#173] is **denied** on this issue.[5]

## 2. Whether the Constitutional Right was Clearly Established

Because the Court finds that issues of material fact remain for the jury with respect to whether a constitutional violation was committed by Defendant Kyambadde, the Court must determine whether, if such violations occurred, Mr. Lillis's constitutional right was clearly established at that time.

"Ordinarily, a plaintiff may show that a particular right was clearly established at the time of the challenged conduct by identifying an on-point Supreme Court or published Tenth Circuit decision; alternatively, the clearly established weight of authority from other courts must have found the law to be as he maintains." *A.M. v. Holmes*, 830 F.3d 1123, 1135 (10th Cir. 2016) (internal quotation marks and alterations omitted). "However, we do not always require case law on point, and the Supreme Court has warned that officials can still be on notice that their conduct violates established law even in novel factual circumstances." *Id.* (internal quotation marks and citations omitted). "We have therefore adopted a sliding scale to determine when law is clearly established." *Id.* "The more obviously egregious the conduct in light of prevailing constitutional principles, the less specificity is required from prior case law to clearly establish the violation." *Id.* at 1135-36. It is not necessary to show that "the very action in question has previously been held unlawful, [but] in the light of pre-existing law the unlawfulness must be apparent." *Id.* at 1136 (internal alterations and quotation marks omitted).

---

[5] To be the clear, the Court does not hold that the evidence is sufficient for this claim to proceed *only* as to Defendant Kyambadde's delay while watching the video; rather the Court concludes that this evidence alone is sufficient to permit the overall claim to survive summary judgment.

The Tenth Circuit Court of Appeals has stated that "there is little doubt that deliberate indifference to an inmate's serious medical need is a clearly established constitutional right . . . ." *Mata*, 427 F.3d at 749; *see, e.g.*, *Weatherford ex rel. Thompson v. Taylor*, 347 F. App'x 400, 404 (10th Cir. 2009) (concluding that a clearly established right was violated where the defendant jail "was aware of a substantial risk of harm to [the plaintiff-inmate] and that [the on-duty supervisor] opted, at least recklessly, to disregard that risk, taking no action on [the plaintiff's] behalf for several hours, and then, only after he collapsed); *Estate of Booker*, 745 F.3d at 434 (concluding "the contours of the right are clearly established such that any reasonable officer in the [d]efendants' position (and with their training) would have known that failing to check [the plaintiff-inmate's] vital signs, perform CPR, or seek medical care for three minutes when he was limp and unconscious . . . could violate the Constitution") (citing *McRaven v. Sanders*, 577 F.3d 974, 983 (8th Cir. 2009) (denying qualified immunity where the officer-defendant "made no attempt to resuscitate" the inmate "for seven minutes before paramedics arrive[d]")). Accordingly, to the extent Defendant Kyambadde seeks qualified immunity, the Motion [#173] is **denied**.

**B.**    ***Monell* Claim**

The County also seeks summary judgment in its favor on Plaintiffs' *Monell* claim for municipal liability. "To establish a municipality's liability under § 1983, a plaintiff must prove (1) the entity executed a policy or custom (2) that caused the plaintiff to suffer deprivation of constitutional or other federal rights." *Spradley v. LeFlore Cty. Detention Ctr. Pub. Trust Bd.*, 764 F. App'x 692, 703 (10th Cir. 2019) (internal quotation marks omitted) (quoting *Moss v. Kopp*, 559 F.3d 1155, 1168 (10th Cir. 2009); *see also Monell v. Dept. of Soc.*

*Servs. of N.Y.*, 436 U.S. 658, 690 n.55 (1978) (holding that local governmental units are "persons" subject to § 1983 liability). "Municipal liability predicated on the failure to train officers to conform to the Constitution's requirements also requires a showing that the officers themselves violated the Constitution." *Spradley*, 764 F. App'x at 703 (citing *Zuchel v. City & County of Denver*, 997 F.2d 730, 734-35 (10th Cir. 1993)).

A municipal policy or custom may take the form of (1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused. *Brammer–Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1188-89 (10th Cir. 2010) (internal quotation marks and bracket alterations omitted).

Plaintiffs assert that municipal liability may be based on several factual grounds here. *Response* [#185] at 27-30. The first issue involves understaffing of nurses at ACDF in 2014. *Id.* at 30. Plaintiffs do not explicitly identify which theory of municipal liability is impacted by this factual assertion, but the Court recognizes that chronic understaffing may affect employee decisions and/or ratification of such decisions. *See Brammer–Hoelter*, 602 F.3d at 1189. Regardless, Plaintiffs do not sufficiently connect any purported understaffing issue to the relevant constitutional violation, i.e., the asserted deliberate indifference which allegedly resulted in the death of Mr. Lillis. *See Response* [#185] at 20-21. Two of

Plaintiffs' expert witnesses provide reports concluding that lack of sufficient nursing care was a contributing factor to the Mr. Lillis's death, but the portions of those reports cited by Plaintiffs certainly provide no clear indication of which evidence underlies their conclusory opinions. *See id.* at 21 (citing *Jobin Aff. & Reports* [#185-31] at 10; *Roscoe Aff. & Reports* [#185-32] at 14-15). Although there is some evidence that there may indeed have been understaffing of nurses at ACDF at the relevant time, thereby creating certain other issues at ACDF, the causal connection between this understaffing and Mr. Lillis's death is pure speculation. Therefore, the Court finds that Plaintiffs have failed to identify a genuine issue of material fact regarding whether understaffing caused the deprivation of Mr. Lillis's constitutional rights. *See Spradley*, 764 F. App'x at 703.

The other grounds on which Plaintiffs base their claim for municipal liability assert (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law, or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused. *Brammer–Hoelter*, 602 F.3d at 1188-89. Without commenting on all of Plaintiffs' theories, the Court finds that at least one theory is sufficiently supported to withstand the County's request for summary judgment and to allow this claim to proceed to the trier of fact.

"Municipal liability may be based . . . on an informal custom so long as this custom amounts to a [continuing, persistent and] widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law." *Brammer–Hoelter*, 602 F.3d at 1189; *Carney v.*

*City & County of Denver*, 534 F.3d 1269, 1274 (10th Cir. 2008). Failure to adequately train employees qualifies as a policy if "that failure results from deliberate indifference to the injuries that may be caused." *Bryson v. Oklahoma City*, 627 F.3d 784, 788 (10th Cir. 2010) (quotation omitted). This standard is met if a "municipality has actual or constructive notice that its action or failure is substantially certain to result in a constitutional violation, and it consciously and deliberately chooses to disregard the risk of harm." *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1318 (10th Cir. 2002) (quotation omitted). "Although a single incident generally will not give rise to liability, deliberate indifference may be found absent a pattern of unconstitutional behavior if a violation of federal rights is a highly predictable or plainly obvious consequence of a municipality's action." *Id.* (quotations and citation omitted).

Plaintiffs present evidence that ACDF medical personnel frequently used video footage from cells to determine whether a reported medical symptom was true, among other reasons, such as to determine whether an inmate had a weapon. *See, e.g.*, *Depo. of Crist* [#185-16] at 117-18; *Depo. of Frank* [#185-23] at 76-82, 117-19; *Depo. of Winegar* [#185-19] at 29-30, 272-74; *Depo. of Elwell* [#185-22] at 17-21, 131-32. The evidence shows that this conduct was partly a training issue, *see, e.g.*, *Depo. of Brown* [#185-20] at 40-41 (testifying that a fellow nurse who was training her directed her to read *The Games Inmates Play*); *Depo. of Winegar* [#185-19] at 23-24, 93-98 (testifying that her supervisor, a Health Services Administrator, told her that she had to read *The Games Inmates Play*), and partly an issue of custom, *see, e.g.*, *Depo. of Frank* [#185-23] at 79 ("I don't know if it's an official policy. It's something you learn."); *Depo. of Elwell* [#185-22] at 131 ("That's common practice to do that. . . . [I]t was pretty common practice, when patients would fall or when something would happen, that we take a look and see what caused it . . . .").

Further, Plaintiffs present evidence that Defendant Kyambadde had, at least occasionally, stated that an inmate was faking his medical need/symptom. *Depo. of Crist* [#185-16] at 44-45.

Under the facts at issue here, a jury could choose to give credence to Defendant Kyambadde's explanation that her actions were not driven by suspicion that Mr. Lillis was faking or could choose to believe that a different motive driven by custom or failure to appropriately train staff at ACDF guided her actions that day. The Court finds that Plaintiffs have presented sufficient evidence to create a genuine issue of material fact regarding whether Defendant Kyambadde's actions were driven by custom or a failure to appropriately train staff at ACDF in order for this claim to be presented to the jury.

Accordingly, the Motion [#173] is **granted** to the extent that summary judgment is entered in favor of Defendants with respect to the *Monell* claim insofar as it is based on understaffing. The Motion [#173] is **denied** with respect to the remainder of the *Monell* claim.

### IV. Conclusion

Based on the foregoing,

IT IS HEREBY **ORDERED** that the Motion [#173] is **GRANTED in part and DENIED in part**, as outlined above.

Dated: July 2, 2019

BY THE COURT:

Kristen L. Mix
United States Magistrate Judge