IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 16-cv-03038-KLM

THE ESTATE OF JEFFREY SCOTT LILLIS, by and through its co-personal representatives
Meghan Lillis and Michele Driscoll,
MEGHAN LILLIS, individually,
C.A.L., individually, a minor, by and through Michele Driscoll as guardian,
C.S.L., individually, a minor, by and through Michele Driscoll as guardian,
A.L., individually, a minor, by and through Robin Booth as next friend and mother,
JORDAN LILLIS, individually, and
ASHLEY PERRY, individually,

    Plaintiffs,

v.

BOARD OF COUNTY COMMISSIONERS OF ARAPAHOE COUNTY;
TYLER S. BROWN, in his official capacity as Arapahoe County Sheriff, and
RUTH KYAMBADDE, RN, individually;

    Defendants.
_____

## ORDER
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on Plaintiffs' **Motion to Compel Production** [#144][1] (the "Motion to Compel") and Non-Party Nurses' (the "Nurses") **Motion for a Protective Order and to Quash the Subpoena** [#169] (the "Motion to Quash"). Non-party Colorado State Board of Nursing (the "Board") appeared as an interested party and timely filed a Response [#168] to Plaintiffs' Motion to Compel, and Plaintiffs filed a combined Reply [#178] to both the Nurses' Motion to Quash [#169] and the Board's Response [#168]. The

---

[1] "[#144]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). This convention is used throughout this Order.

Court has reviewed the Motions [#144, #169], the Response [#168], the Reply [#178], the entire case file, and the applicable law, and is sufficiently advised in the premises. For the reasons set forth below, the Motion to Compel [#144] is **GRANTED in part**, **DENIED as moot in part**, and **taken under advisement in part**, and the Motion to Quash [#169] is **DENIED**.

## I. Background

This case involves the death of an inmate, Jeffrey Scott Lillis ("Lillis"), while he was detained in the Arapahoe County Detention Facility ("ACDF") in Arapahoe County, Colorado. *Compl.* [#1] ¶¶ 1, 40. The remaining claims in this case are (1) a claim under the Fourteenth Amendment for deliberate indifference to medical needs against Defendant Ruth Kyambadde ("Kyambadde") in her individual capacity and (2) a Monell claim against the Board of County Commissioners of Arapahoe County and Arapahoe County Sheriff Tyler Brown (collectively, the "County Defendants"). Plaintiffs formerly asserted a wrongful death claim and a Fourteenth Amendment claim against other nurses at ACDF and other defendants, but that claim has since been dismissed. *See Order* [#87]; *Stipulation of Dismissal* [#133]; *Stipulation of Dismissal* [#134].

After the tragic death of Mr. Lillis at ACDF, the Colorado State Board of Nursing (the "Board"), an administrative agency within the Department of Regulatory Agencies ("DORA"), conducted an investigation into the care and treatment provided to Mr. Lillis in the days leading up to his death. *Motion to Compel* [#144] at 2. The investigation commenced after the filing of the present lawsuit was reported in the press. *Motion to Quash* [#169] at 4, n.1. Plaintiffs subsequently sought production by Defendant

Kyambadde and former defendant nurses Robly Evans, Denise Elwell, Jason Frank, Anita Brown, and Nancy Winegar of "all records . . . relating to any and all proceedings by the . . . [Board] . . . regarding the death of Jeffrey Lillis on December 14, 2014" (hereinafter the "Board Records"). *See Motion to Compel* [#106] at 1-2. The Court granted Plaintiffs' prior motion to compel with respect to Defendant Kyambadde and denied the motion as moot to the extent it was asserted against the former defendant nurses. *See Order* [#135]. The only argument asserted by the current and former defendants in opposition to the prior motion to compel was that the Court should recognize and apply the Colorado statutory peer review privilege, which the Court declined to do after determining that creation of a federal peer review privilege was inappropriate in the given circumstances. *Id*. at 10-11.

Pursuant to that Order [#135], Plaintiffs served subpoenas on the Board "requesting the production of the complete case files related to the Board's inquiries into the medical care and treatment given to Mr. Lillis" by the Nurses. *Motion to Compel* [#144] at 2. The Board "responded to the subpoenas with a number of objections and a refusal to produce any documents covered by the subpoenas." *Id*. at 3. In its Response [#168], the Board asserts that the Board Records are protected from disclosure on several grounds: (1) relevance; (2) confidentiality; (3) deliberative process privilege; (4) confidentiality of settlement communications; and (5) law enforcement privilege. The Board also submitted a privilege log attached to their Response. *See Ex. 1 to Response* [#168-1]. The Nurses filed their Motion to Quash [#169] in response to the present Motion to Compel [#144], likewise arguing that (1) the Board Records are not relevant to Plaintiffs' claims; (2) the Nurses have an expectation of privacy with respect to the Records; (3) settlement communications are privileged; and (4) the Court erred in its previous Order [#135] in

determining that the Records are not protected by the peer review privilege. *See Motion to Quash* [#169]. As the Board's and Nurses' arguments with respect to relevance, the expectation of confidentiality, and the settlement privilege are duplicative, the Court addresses both parties' arguments collectively in its analysis to the extent that they overlap.

## II. Legal Standard

The Federal Rules of Civil Procedure allow for the discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). The party resisting discovery based on a privilege has the burden of establishing that the privilege applies. *Zander v. Craig Hosp.*, 743 F. Supp. 2d 1225, 1231-32 (D. Colo. 2010) (citation omitted). In establishing the applicability of the privilege, the resisting party must expressly assert it and describe the nature of the purportedly-privileged documents, ordinarily by tendering a privilege log. *Id.* As noted above, the Board tendered a privilege log here.

## III. Analysis

The Court first addresses the Nurses' argument revisiting the issue of whether the Court should recognize a federal peer review privilege. The Court then addresses the Board's and Nurses' arguments regarding relevance and the expectation of confidentiality. Finally, the Court examines whether the Board Records may be protected from disclosure under any other asserted privileges.

**A.    Peer Review Privilege - Federal Common Law**

In its February 7, 2019 Order [#135], the Court declined to apply the Colorado statutory "peer review" privilege to this federal action, noting that "any public or private

benefit from keeping the peer review information or documents confidential in this case is outweighed by the public benefit that flows from full disclosure of all relevant information needed to ascertain the truth of what occurred." [#135] at 10-11. In their Motion to Quash [#169], the Nurses urge the Court to reevaluate certain aspects of its prior Order [#135]. [#169] at 16-19. However, the arguments raised by the Nurses in suggesting that the Court reevaluate its Order [#135] have already been fully briefed in response to Plaintiffs' September 24, 2018 Motion to Compel [#106] and addressed in the previous Order [#135]. *See Response* [#113]; *Response* [#116]; *Order* [#135] at 8-10 . Simply stated, the Nurses have not provided the Court with any new reason to revisit its previous analysis. Thus, to the extent the Nurses argue that the Court should reconsider its ruling in its prior Order [#135] and recognize Colorado's statutory peer review privilege, the Court declines to do so, especially in light of the fact that there are no remaining state law claims in this action.

**B.      Relevance of Materials Sought**

The Nurses argue that the Board Records are not relevant to any of the remaining claims against either Nurse Kyambadde or the County Defendants because "Plaintiffs do not and cannot plausibly assert that the materials from the DORA files of [the non-party nurses] relate at all to the care provided by Nurse Kyambadde," and "[t]he Board does not have the authority to opine on the global conduct of the County, since the County itself is not a licensed nurse." *Motion to Quash* [#169] at 9, 11. Plaintiffs counter that "if the Board did find that all or most of the Non-Party Nurses . . . violated the Nurse Practice Act Standards, the fact that Arapahoe County . . . found [that] the nurses who treated Mr. Lillis did nothing wrong shows a custom of, at the very least, tolerating reckless conduct by its nurses." *Reply* [#178] at 7.

Because the pertinent question regarding the County Defendants' liability under *Monell* is whether Arapahoe County had a custom, policy, or practice of allowing nurses to practice outside the scope of their licenses, the Board Records with respect to the non-party nurses are clearly relevant. It is well-settled that relevance is a broad concept. Fed. R. Civ. P. 26(b)(1) permits discovery "regarding any matter, not privileged, that is relevant to the claim or defense of any party." *See Williams v. Bd. of Cty. Comm'rs*, 192 F.R.D. 698, 702 (D. Kan. 2000) (request for discovery should be considered relevant if there is any possibility the information sought may be relevant to a claim or defense). Here, Plaintiffs have asserted that the Board Records of the Nurses, "all of whom treated Jeff Lillis at Arapahoe County Jail immediately before his death from treatable pneumonia, are relevant to show that to the extent the Nurses all failed to provide adequate care to Mr. Lillis in the exact same way, Arapahoe County had a custom, policy, or practice that caused this type of failure." *Reply* [#178] at 5. While the Court does not comment on the ultimate admissibility or weight of the evidence sought, the Court finds that Plaintiffs have demonstrated that the Board Records might reveal facts relevant to Plaintiffs' *Monell* claim against the County Defendants.

With respect to the Board's privilege log, entries ## 10-24 and 27-30 are withheld solely on grounds of relevance. Because the Board Records might reveal facts relevant to Plaintiffs' claim, the Court determines that entries ## 10-24 and 27-30 are not protected from disclosure under any asserted protection or privilege and therefore **orders** that they be produced.

**C.     Expectation of Privacy/Confidentiality**

The Nurses next argue that "[t]he Court should enter a protective order forbidding the discovery sought" by Plaintiffs "based on the privacy interests of the non-party Nurses." *Motion to Quash* [#169] at 24. The Board similarly argues that "the Nurses had an expectation of privacy as to communications with the Board," and that "[t]here is no compelling state interest in the disclosure to Plaintiffs here of the communications with the Board." *Response* [#168] at 12. Further, the Board contends that its own written policies "further enforce the confidential and non-public nature of its documents." *Id.* at 10. According to the privilege log provided by the Board, several documents are withheld solely on grounds of "Confidentiality of Board Files/Expectation of Privacy." *Ex. 1 to Response* [#168-1] at 1-2, 7-8.

As a preliminary matter, "[a] concern for protecting confidentiality does not equate to privilege." *Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc.*, No. 05-2164-MLB-DWB, 2007 WL 1246216, at *2 (D. Kan. Apr. 27, 2007). Further, in *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 30 (1984), the Supreme Court observed:

> The [civil discovery] Rules do not differentiate between information that is private or intimate and that to which no privacy interests attach. Under the Rules, the only express limitations are that the information sought is not privileged, and is relevant to the subject matter of the pending action. Thus, the Rules often allow extensive intrusion into the affairs of both litigants and third parties.

As such, the fact that the discovery sought by Plaintiffs might be confidential does not automatically shield it from the scope of permissible discovery pursuant to Fed. R. Civ. P. 26(b)(1). *See also Lobato v. Ford*, No. 05-cv-01437-LTB-CBS, 2007 WL 3342598 (D. Colo. Nov. 9, 2007) ("The protection for privileged information afforded by Rule 26(b)(1) does not extend to 'confidential' information"). Therefore, although both the Nurses and the Board

have asserted confidentiality over the Board Records, this does not equate to an assertion of privilege.

The Board cites to *Martinelli v. District Court*, 612 P.2d 1083 (Colo. 1980), in arguing that the Court should consider the constitutional right to privacy as weighing against disclosure of the Board Records at issue here. *Response* [#168] at 10-12. In *Martinelli*, the Colorado Supreme Court acknowledged the Fourteenth Amendment "right to privacy which protects the individual interest in avoiding disclosure of personal matters." 612 P.2d at 1091. The court established a three-part test to determine whether allegedly confidential information should be disclosed, which was later adopted by the Tenth Circuit in *Denver Policemen's Protective Association v. Lichtenstein*, 660 F.2d 432 (10th Cir. 1981). As set forth in *Martinelli*, when the right to confidentiality is invoked to prevent disclosure of information, the court must conduct a "tri-partite balancing inquiry," as follows:

> (1) does the party seeking to come within the protection of the right to confidentiality have a legitimate expectation that the materials or information will not be disclosed?
> (2) is disclosure nonetheless required to serve a compelling state interest?
> (3) if so, will the necessary disclosure occur in that manner which is least intrusive with respect to the right to confidentiality?

612 P.2d at 1091.

The Nurses' right to privacy claim fails under the first prong of the *Martinelli* test. In order for the constitutional right to confidentiality to arise, the Nurses "must show that [they] ha[ve] 'an actual or subjective expectation that the information . . . not be disclosed'" and "that the material or information which [they] seek to protect against disclosure is 'highly personal and sensitive.'" *Id.* (citing *Byron, Harless, Schaffer, Reid & Assocs., Inc. v. State ex rel. Schellenberg*, 360 So. 2d 83, 94-95 (Fla. App. 1978)). Although the Board's

assertions that its records are confidential might have given the Nurses an expectation that the information would not be disclosed, the Nurses have failed to show that the records they seek to protect from disclosure are "highly personal and sensitive" as required by the *Martinelli* test. *Martinelli* adopted from *Schellenberg* a "'descending order of sensitivity and constitutional interest,' pursuant to which the claimant's objective expectation of nondisclosure is to be determined." *Martinelli*, 612 P.2d at 1091-92 (citing *Schellenberg*, 360 So. 2d at 95). Information reflecting the "intimate relationships" of the claimant of confidentiality rank at the highest tier as the class of information most likely to fall within "the zone of protection of the right to confidentiality." *Id.* at 1092. The *Martinelli* court further outlined the lower rankings set forth in *Schellenberg*:

> [T]he progressively lower tiers would include . . . [the claimant's] beliefs and self-insights; his [or her] personal habits; routine autobiographical material; and finally, his [or her] name, address, marital status, and present employment, which together may constitute his [or her] irreducible identity to anyone who has reason to acknowledge his [or her] existence.

*Id.* (citing *Schellenberg*, 360 So. 2d at 95). Based on the factual circumstances of the individual case, "it is less likely that information or materials in the lower tiers of this ranking will come within the zone of protection of the right to confidentiality." *Id.*

Here, both the Board and the Nurses cite to the Board's policies and provisions of Colorado law in asserting that the Nurses have a legitimate expectation that the Board Records will be kept confidential. *See Motion to Quash* [#168] at 24; *Response* [#169] at 9-10. However, both the Board and the Nurses ignore controlling Tenth Circuit Court of Appeals authority on the issue of the constitutional right to confidentiality:

> The presence of privacy statutes and regulations may inform our judgment concerning the scope of the constitutional right to privacy. However, such local acts, standing alone, fall far short of the kind of proof necessary to

establish a broadly recognized, reasonable expectation of privacy which has been identified by precedent.

*Flanagan v. Munger*, 890 F.2d 1557, 1571 (10th Cir. 1989). In *Flanagan*, the Tenth Circuit found that reprimands contained in the personnel files of police officers were not "of a highly personal nature" and did not "create[ ] a constitutional expectation of privacy" because the reprimands "related simply to the officers' work as police officers." *Id*. The Tenth Circuit was thus "unwilling to hold that a reprimand of a public employee is of a highly personal nature and creates a constitutional expectation of privacy." *Id*.

The Court finds that the instant case is akin to *Flanagan* in that the investigative findings "relate[ ] simply to the [Nurses'] work as [nurses]," and that such work as public employees is not "of a highly personal nature" so as to "create[ ] a constitutional expectation of privacy." *Id*.

With respect to the Board's privilege log, entries ## 1-9, 35, 36, 38, 40, 41, and 43 assert no grounds for withholding information besides confidentiality or the expectation of privacy.[2] Since the Court holds that the information contained in the Board Records is not "of a highly personal nature," the Board's and Nurses' privacy claims cannot stand. Thus, the Court determines that entries ## 1-9, 35, 36, 38, 40, 41, and 43 are not protected from disclosure under any asserted protection or privilege and therefore **orders** that they be produced.

**D.    Settlement Privilege - Federal Common Law**

The Nurses next argue that their "communications with DORA's Office of Expedited

---

[2] The Court acknowledges that entry # 9 also asserts that it contains no relevant information. *Ex. 1 to Response* [#168-1] at 2. The Court has already addressed the issue of relevance and found the Board's and Nurses' arguments unavailing. *See supra* § III.B.

-10-

Settlement should be shielded from discovery" because "such communications should be privileged."  The Board separately argues that "pursuant to Fed. R. Evid. 408, counsel's settlement communications are not admissible to prove or disprove any of Plaintiffs' claims." *Response* [#168] at 18.  Plaintiffs counter that "[w]hile the documents might not ultimately be admissible, '[i]nformation within this scope of discovery need not be admissible in evidence to be discoverable.'" *Reply* [#178] at 17 (citing Fed. R. Civ. P. 26(b)(1)).

As an initial matter, the Court knows of no controlling Tenth Circuit cases recognizing a federal settlement privilege, and the Nurses have cited none.  To the contrary, "courts within the Tenth Circuit have declined to imply the existence of a federal settlement privilege."  *Hydro Eng'g, Inc, v. Petter Invs., Inc.*, No. 2:11-cv-00139-RJS-EJF, 2013 WL 6635163, at *1 (D. Utah Dec. 17, 2013).  *See also Evanston Ins. Co. v. Aminokit Labs., Inc.*, No. 15-cv-02665-RM-NYW, 2015 WL 9738102, at *7 (D. Colo. Oct. 21, 2016) ("The Tenth Circuit has not found any separate federal settlement privilege based on Rule 408 or otherwise, and this court finds it to be improper to imply one.").  Thus, to the extent the Nurses urge the Court to recognize a federal settlement privilege, the Court declines to do so.

Per the Board's privilege log, entries ## 45-50 assert that they are withheld on grounds of relevance and because they contain settlement communications.  *See Ex. 1 to Response* [#168-1] at 10-11.  The Court has now addressed both the issue of relevance and that of the settlement privilege and found both arguments unpersuasive as grounds for protecting the Board Records from disclosure.  Thus, the Court determines that entries ## 45-50 are not protected from disclosure under any asserted protection or privilege and

therefore **orders** that they be produced.

E.     **Deliberative Process Privilege**

According to the privilege log provided by the Board, the deliberative process privilege has been asserted only for entry # 44. The entry notes that the "document only summarizes information already in the possession of Plaintiffs" and that it was "listed to err on the side of caution," as the Board believes that "Plaintiff[s] do not seek this document." *Ex. 1 to Response* [#168-1] at 9. The Board's Response to Plaintiffs' Motion to Compel informs the Court that "[t]hrough conferral . . . Plaintiffs have excluded from their request any summaries in the investigative reports of documents already in Plaintiffs' possession." *Response* [#168] at 16. As entry # 44 appears on its face to contain only summaries of documents already in Plaintiffs' possession, the Court determines that it is not responsive to the categories of materials sought by Plaintiffs' subpoena and need not be produced. Thus, the Court does not address the issue of whether the deliberative process privilege would apply to any documents listed on the privilege log, as that privilege has not been asserted to protect any documents that are genuinely sought by Plaintiffs. The Motion [#144] is thus **denied as moot** with respect to entry # 44.

F.     **Law Enforcement Investigative Privilege**

Finally, the Board argues that certain documents sought by Plaintiffs are protected under the law enforcement investigative privilege. *See Response* [#168] at 13-15. These documents are listed as entries ## 25, 26, 31-34, 37, 39, and 42 on the Board's privilege log. *See Ex. 1 to Response* [#168-1] at 5-8. The law enforcement investigative privilege is a governmental privilege which belongs to the government alone and must be asserted

by it. *In re M & L Bus. Mach. Co., Inc.*, 161 B.R. 689, 693 (D. Colo. 1993) (citing *United States v. Winner*, 641 F.2d 825, 831 (10th Cir. 1981) (identifying the law enforcement investigative privilege as one of the privileges "exclusively reserved for the Government")). Here, the Board is an administrative agency within DORA with the authority to enforce the provisions of the Nurse Practice Act and discipline nurses who violate that Act pursuant to C.R.S. § 12-38-108(1)(b) and (b.5). *See Response* [#168] at 4-5. The Board thus may assert the law enforcement investigative privilege.

The law enforcement investigative privilege is "based primarily on the harm to law enforcement efforts which might arise from public disclosure of . . . investigatory files." *Winner*, 641 F.2d at 831 (quoting *Black v. Sheraton Corp.*, 564 F.2d 531 (D.C. Cir. 1977)). "To assert the law enforcement evidentiary privilege, the responsible official in the department must lodge a formal claim of privilege, after actual personal consideration, specifying with particularity the information for which protection is sought, and explain why the information falls within the scope of the privilege." *Winner*, 641 F.2d at 831. "The purpose of the law enforcement privilege is to prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witness and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation and otherwise to prevent interference with an investigation. *In re M & L Bus. Mach. Co., Inc.*, 161 B.R. at 693 (citations and internal quotation marks omitted). "The privilege may be overridden by the movant's substantial need for the documents and its inability to obtain their substantial equivalent by other means." *Id.* (citations and internal quotation marks omitted).

This privilege covers only "records or information compiled for law enforcement

purposes. To qualify for this privilege from disclosure the information must satisfy two conditions: its source must be a government agency, and the agency must demonstrate how a disclosure would cause one of the harms specified in [5 U.S.C.] § 552(b)(7)." *Design Basics, LLC v. ProBuild Co. LLC*, No. 10-cv-02274-REB-BNB, 2011 WL 2600980, at *4 (D. Colo. June 30, 2011) (quoting *Forest Prods. Nw., Inc. v. United States*, 62 Fed. Cl. 109, 113 (Fed. Cl. 2004) (citing *Tuite v. Henry*, 181 F.R.D. 175, 176-77 (D.D.C. 1998) (holding that "[t]he federal law enforcement privilege is a qualified privilege designed to prevent disclosure of information that would be contrary to the public interest in the effective functioning of law enforcement. The privilege serves to preserve the integrity of law enforcement techniques and confidential sources, protects witnesses and law enforcement personnel, safeguards the privacy of individuals under investigation, and prevents interference with investigations")). The harms specified in 5 U.S.C. § 552(b)(7) include interference with enforcement proceedings, deprivation of a right to a fair trial or an impartial adjudication, unwarranted invasions of personal privacy, disclosure of the identity of a confidential source or information furnished by a confidential source, disclosure of techniques and procedures for law enforcement investigations or prosecutions, disclosure of guidelines for law enforcement investigations or prosecutions or endangering the life or physical safety of any individual.

Here, the Board asserts that the "reports are subject to the law enforcement investigative privilege as they were created by the Board's investigator specifically in relation to pending administrative proceedings," and "the premature release of the information would reveal the Board's case against the Nurses, including the nature, direction, and focus of its investigations, and is sufficient to satisfy the 'harm' requirement."

*Response* [#168] at 15. However, the Board does not indicate exactly which harm specified in 5 U.S.C. § 552(b)(7) would result due to disclosure of the findings against the Nurses. Though not tailored to the precise language of the statute, the asserted harm appears to be an interference with enforcement proceedings. The Court is mindful of the Board's interest in preserving the integrity of its investigations. However, the Court is unable to determine whether the Board's assertion of the law enforcement investigative privilege is valid in light of the lack of detail regarding how exactly a disclosure would cause an interference with its enforcement proceedings against the Nurses. The Court therefore **orders** that entries ## 25, 26, 31-34, 37, 39, and 42 be submitted to the Court for an *in camera* review so that it can determine whether the law enforcement investigative privilege applies.

### IV. Conclusion

Based on the foregoing,

IT IS HEREBY **ORDERED** that Plaintiff's Motion to Compel [#144] is **GRANTED in part**, **DENIED as moot in part**, and **taken under advisement in part**, as outlined above.

IT IS FURTHER **ORDERED** that the Nurses' Motion to Quash [#169] is **DENIED**.[3]

IT IS FURTHER **ORDERED** that entries ## 1-24, 27-30, 35, 36, 38, 40, 41, 43, and 45-50 shall be produced **no later than July 22, 2019**.

IT IS FURTHER **ORDERED** that entries ## 25, 26, 31-34, 37, 39, and 42 shall be

---

[3] The Court is conducting *in camera* review only with respect to the documents asserted by the Board to be protected under the law enforcement privilege. Again, the Board is the only party here with standing to assert that privilege. Because the applicability of the law enforcement privilege is only at issue in connection with the Board's Response to the Motion to Compel (and is completely unrelated to the Motion to Quash), the Nurses' Motion to Quash can be denied in full at this time.

submitted to the Court for *in camera* review **no later than July 18, 2019**.

Dated: July 12, 2019

BY THE COURT:

Kristen L. Mix
United States Magistrate Judge