IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 16-cv-03038-KLM

THE ESTATE OF JEFFREY SCOTT LILLIS, by and through its co-personal representatives Meghan Lillis and Michele Driscoll,
MEGHAN LILLIS, individually,
C.A.L., individually, a minor, by and through Michele Driscoll as guardian,
C.S.L., individually, a minor, by and through Michele Driscoll as guardian,
A.L., individually, a minor, by and through Robin Booth as next friend and mother,
JORDAN LILLIS, individually, and
ASHLEY PERRY, individually,

    Plaintiffs,

v.

BOARD OF COUNTY COMMISSIONERS OF ARAPAHOE COUNTY;
TYLER S. BROWN, in his official capacity as Arapahoe County Sheriff, and
RUTH KYAMBADDE, RN, individually;

    Defendants.
_____

**ORDER**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

    This matter is before the Court on **Plaintiffs' Motion for Order to Show Cause Why Defense Counsel Should Not Be Sanctioned** (the "Motion") [#138], in which Plaintiffs seek sanctions against Defendants' counsel pursuant to Fed. R. Civ. P. 30(d) and 28 U.S.C.§ 1927. Defendants filed a Response [#151] in opposition to the Motion, and Plaintiffs filed a Reply [#159]. The Court held a hearing on the Motion on April 9, 2019. The Court has reviewed the briefing on the Motion, the entire docket, the applicable law, and is sufficiently advised in the premises. For the following reasons, the Motion [#138] is **GRANTED**.

## I. Background

This case involves the death of an inmate, Jeffrey Scott Lillis ("Lillis"), while he was detained in the Arapahoe County Detention Facility ("ACDF") in Arapahoe County, Colorado. *Compl.* [#1] ¶¶ 1, 40. The remaining claims in this case are (1) a claim under the Fourteenth Amendment for deliberate indifference to medical needs against Defendant Ruth Kyambadde in her individual capacity and (2) a *Monell* claim against the Board of County Commissioners of Arapahoe County and Arapahoe County Sheriff Tyler Brown (collectively, the "County Defendants"). Plaintiffs formerly asserted a wrongful death claim and a Fourteenth Amendment claim against other nurses at ACDF and other Defendants, but that claim has since been dismissed. *See Order* [#87]; *Stipulation of Dismissal* [#133]; *Stipulation of Dismissal* [#134].

On January 29, 2019, defense counsel Writer Mott ("Mott") deposed Michael J. Hart ("Hart"), an inmate and third-party witness to Lillis' death. *Motion* [#138]; *Defs.' Ex. A-2, Dep. of Michael J. Hart* [#151-2] (the "Deposition"). During the Deposition, Attorney Mott used Mr. Hart's medical records to contradict statements made by Mr. Hart in his sworn declaration (the "Declaration"). *Response* [#151] at 4-8; *see Defs.' Ex. A-1, Decl. of Michael Hart* [#151-1]. It is unclear when the medical records were first obtained, but they were allegedly retained by ACDF. *Motion* [#138] at 2. Plaintiffs contend, and Attorney Mott does not contest, that Attorney Mott acquired the medical records without Mr. Hart's knowledge or consent, or permission from the Court, and that the first time they were used in this case was during the Deposition. *Id.* at 2-3.

Plaintiffs now move for sanctions against Attorney Mott on the grounds that he willfully and knowingly procured, and used, Mr. Hart's medical records in violation of the

Health Insurance Portability and Accountability Act of 1996 ("HIPAA"). *Id.* at 1-3. The Motion [#138] is brought pursuant to Fed. R. Civ. P. 30(d) and 28 U.S.C. § 1927. *Id.* at 6.

## II. Analysis

"The decision to impose sanctions for discovery violations and any determination as to what sanctions are appropriate are matters generally entrusted to the discretion of the district court." *Bowers v. Nat'l Collegiate Athletics Ass'n*, 475 F.3d 524, 538 (3d Cir. 2007). Pursuant to Fed. R. Civ. P. 30(d)(2), "[t]he Court may impose an appropriate sanction—including the reasonable expenses and attorneys' fees incurred by any party—on a person who impedes, delays, or frustrates the fair examination of the deponent." *See, e.g.*, *Deville v. Givaudan Fragrances Corp.*, 419 F. App'x 201, 209 (3d Cir. 2011) (affirming magistrate judge's imposition of sanctions pursuant to Fed. R. Civ. P. 30(d)(2) on finding that attorney "testified on behalf of her witness by way of suggestive speaking objections"). Further, according to the Advisory Committee's Note to the 1993 Amendments to Fed. R. Civ. P. 30(d), sanctions may be authorized "not only when a deposition is unreasonably prolonged, but also when an attorney engages in other practices that improperly frustrate the fair examination of the deponent . . . ."

Sanctions under 28 U.S.C. § 1927 are appropriate when an attorney acts "recklessly or with indifference to the law." *Dominion Video Satellite, Inc. v. Echostar Satellite LLC*, 430 F.3d 1269, 1278 (10th Cir. 2005). However, sanctions sought pursuant to section 1927 can be awarded even in the absence of a finding of bad faith. *Hamilton v. Boise Cascade Exp.*, 519 F.3d 1197, 1202 (10th Cir. 2008). Moreover, section 1927 "is penal in nature, [and] the award should be made only in instances evidencing serious and [studied] disregard for the orderly process of justice." *Miera v. Dairyland Ins. Co.*, 143 F.3d 1337,

1342 (10th Cir. 1998) (quotation marks and citations omitted).

The instant Motion [#138] raises two questions: whether HIPAA was violated when Attorney Mott obtained and used Mr. Hart's medical records in the Deposition, and, if so, what sanctions would be appropriate, if any. HIPAA is designed to restrict the dissemination of a person's protected health information. "[Through] HIPAA, Congress has spoken about the protection that must be extended to patients regarding their health related information." *EEOC v. Boston Mkt. Corp.*, No. CV 03-4227, 2004 WL 3327264, at *2 (E.D.N.Y. Dec. 16, 2004) (internal quotations omitted). "HIPAA and the standards promulgated by the Secretary of Health and Human Services ["DHHS"] in the Code of Federal Regulations set forth the baseline for the release of health information." *Law v. Zuckerman*, 307 F. Supp. 2d 705, 708 (D. Md. 2004); *see* 45 C.F.R. § 160.101 *et seq.* In certain limited circumstances, such as with a court order, a person's protected health information may be obtainable without that person's knowledge or consent. *See* 45 C.F.R. § 164.512(e)(1)(I). However, if counsel attempts to collect protected health information without obtaining consent or meeting any of the exceptions in 45 C.F.R. § 162.512, he has violated HIPAA, and sanctions may be appropriate. *See Crenshaw v. MONY Life Ins. Co.*, 318 F. Supp. 2d 1015, 1027, 1029-30 (S.D. Cal. 2004); *Zuckerman*, 307 F. Supp. 2d at 712-13. Attorney Mott does not contest that Mr. Hart's medical records are protected health information. He also does not refute the allegation that he failed to inform opposing counsel, the Court, or Mr. Hart that he was seeking Mr. Hart's medical records. Thus, unless an exception applies or there are other mitigating circumstances, sanctions may be appropriate.

In opposition, Attorney Mott makes the following five arguments in defense of his

use of Mr. Hart's medical records: (1) ACDF is not a "covered entity" under HIPAA and thus, has no statutory duty to maintain inmate medical privacy, a position Plaintiffs' counsel once took in an unrelated suit, *Response* [#151] at 2; (2) Plaintiffs lack standing to impose sanctions because they do not represent Mr. Hart, a third party, *id.* at 13; (3) there is no private right of action under HIPAA and Plaintiffs cannot circumvent that fact by asking for sanctions pursuant to the Court's supervisory power, *id.* at 11; (4) assuming ACDF is a covered entity, it "may disclose protected health information in response to lawful process without notifying the party whose records are sought," when there is a protective order in place, *id.* at 9, and; (5) Mr. Hart effectively waived his HIPAA protections by placing his health at issue in his Declaration [#151-1], *id.* at 12.

**A.     Whether Attorney Mott Violated HIPAA**

As a threshold matter, the Court addresses (1) whether ACDF is a covered entity and (2) whether Plaintiffs are able to request sanctions when third-party rights are violated. The parties have provided the Court with minimal authority addressing whether a prison is or is not a covered entity under HIPAA.  Attorney Mott directs the Court to two cases in support of his position, however neither one is controlling nor persuasive.  *See Response* [#151] at 8-9 (citing *Winfree v. S. Cent. Reg'l Jail*, No. 2:16-cv-06332, 2018 WL 737429 (S.D. W. Va. Jan. 16, 2018) (deciding in dicta that the jail defendant was not a covered entity while determining that HIPAA did not create a private right of action) and *McElyea v. Wallace*, No. 3:11-0914, 2011 WL 5444100 (M.D. Tenn. Nov. 9, 2011) (deciding that a *judge and an attorney* were not covered entities under HIPAA)).  Nevertheless, few courts have tackled the question before the Court now.  Generally, prisoners have, at least in a limited respect, a right to privacy in their medical records.  *See U.S. v. Deleon*, 323 F.

Supp. 3d 1273, 1281 n. 5 (D.N.M. 2018); *Howard v. Douglas County Jail*, 2009 WL 1504733, *4, n.5 (D. Kan. May 28, 2009) (discussing privacy in a prison context); *accord* 45 C.F.R. § 164.512(k)(5)(I) (limiting correctional facilities' access to a prisoner's protected health information). Moreover, when a prison is providing health care to a prisoner, it is acting in a way similar to healthcare providers, which are normally considered covered entities under HIPAA. *See Fernandez v. Cal. Dept. of Correction & Rehabilitation*, No. 2:11-cv-01125 MCE KJN P, 2014 WL 794332, at *5 (E.D. Cal. Feb. 27, 2014) (adopting the defendant's averment that HIPAA protects inmates' medical information regarding treatment at defendant's facility); 45 C.F.R. § 164.512(k)(5)(ii) ("A covered entity *that is a correctional institution* may use protected health information . . . .") (emphasis added). Thus, absent any contention from the parties that ACDF was not providing health care to Mr. Hart (and was apparently the "custodian" of his medical records, *Motion* [#138] at 3) the Court finds that it was a covered entity under HIPAA, and thus held to the statutory standards regarding dissemination of protected medical information.

The fact that Plaintiffs' counsel once argued for the opposite conclusion does not trouble the Court. *See Response* [#151] at 8-9. In unrelated litigation, with different parties and facts, counsel are free to take different positions—especially when their prior position was not adopted by the court. *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001) (courts "regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position" in determining whether to estop that party).

Regarding the question of whether Plaintiffs have standing to move for sanctions against Attorney Mott, both parties concede that HIPAA does not create a private right of action. *Motion* [#138] at 4 n.1; *Response* [#151] at 10; *Wilkerson v. Shinseki*, 606 F.3d

1256, 1267 n.4 (10th Cir. 2010). However, unlike cases where a plaintiff complains that his privacy rights under HIPAA were violated, *see Wilkerson*, 606 F.3d at 1267 n.4, Plaintiffs are not seeking relief for a violation of their privacy rights—they seek sanctions related to an alleged HIPAA violation, something already deemed appropriate above. Attorney Mott's argument that Plaintiff's counsel cannot seek sanctions because they do not represent Mr. Hart fails for similar reasons. Generally, a party may not assert rights on behalf of a third party. *Sessions v. Morales-Santana*, --- U.S. ----, 137 S. Ct. 1678, 1689 (2017). However, Plaintiffs have made clear that they are not asserting Mr. Hart's rights to medical record privacy, instead resting on the supervisory power of the Court. *Reply* [#159] at 8. "Ordinarily the control of attorneys' conduct in trial litigation is within the supervisory powers of the trial judge, and is thus a matter of judicial discretion." *Weeks v. Indep. Sch. Dist. No I-89*, 230 F.3d 1201, 1208 (10th Cir. 2000) (quoting *Cole v. Ruidoso Mun. Sch.*, 43 F.3d 1373, 1383 (10th Cir. 1994). Accordingly, "any conduct that, viewed objectively, manifests either intentional or reckless disregard of the duties to the court, is sanctionable." *B. Willis, C.P.A., Inc. v. Pub. Serv. Co.*, 511 F. App'x 753, 756 (10th Cir. 2013). An attorney owes a duty to the courts not to act "recklessly or with indifference to the law." *Dominion*, 430 F.3d at 1278. Hence, even if the party wronged by an attorney's reckless conduct is not a party to the litigation, a Court may, through its supervisory powers, impose sanctions.

Next, Attorney Mott argues that he did not violate HIPAA by obtaining and using Mr. Hart's medical records because he did so pursuant to a qualified protective order. *Response* [#151] at 9. Plaintiffs, however, note that the exception on which Attorney Mott relies nevertheless requires that he obtain protected health information through a "lawful

process." Accordingly, Plaintiffs argue that Attorney Mott failed to follow such a process in obtaining Mr. Hart's medical records. *Reply* [#159] at 5. Ultimately, the Court finds that the protective order exception does not apply to Attorney Mott, and that he did not obtain Mr. Hart's medical records in accordance with HIPAA.

HIPAA provides that a covered entity may disclose protected health information during a judicial proceeding "[i]n response to a subpoena, discovery request, or other lawful process, that is not accompanied by an order of the court." 45 C.F.R. § 164.512(e)(1)(ii). However, this can only be done if either the subject of the request has been reasonably notified or the covered entity "receives satisfactory assurance" that the information would be protected under a qualified protective order. *Id.* § 164.512(e)(1)(ii)(A)-(B). First, the Court presumes that the Stipulated Protective Order [#105] is a qualified protective order pursuant to HIPAA because neither party contends otherwise. Second, the Court notes that the applicable regulation does not define the phrase "lawful process." However, evidenced by subsections A and B, the statutory intent to permit disclosure of protected health information only in instances where all reasonable attempts have been made to protect the information or gain consent is clear. Further, the terms preceding "lawful process," "subpoena" and "discovery request," imply party involvement, such that interested parties to the judicial proceeding may also be informed as to whether reasonable assurances of notice and confidentiality have been made. Plaintiffs were never informed that Attorney Mott was pursuing Mr. Hart's medical records, and thus were never given the opportunity to object beforehand. Accordingly, Attorney Mott did not obtain Mr. Hart's medical records through a "lawful process."

Additionally, although not specifically raised by Plaintiffs, Attorney Mott fails to show

that he received the records after giving ACDF "reasonable assurances" that a protective order was issued. Even assuming Attorney Mott followed a lawful process, the protective order exception only applies when a covered entity receives "a written statement and accompanying documentation demonstrating" that a protective order is in place or a request for one has been made. *Id.* § 164.512(e)(1)(iv)(A)-(B). While such a statement is sometimes not required, it is only in instances when the covered entity itself seeks to give the individual notice or obtain a protective order, which is not the case here. *Id.* § 164.512(e)(1)(vi). Hence, Attorney Mottt was required to provide a written statement to ACDF. Instead, Plaintiffs allege that Attorney Mott received Mr. Hart's medical records only by "using his authority as Deputy County Attorney." *Motion* [#138] at 3. Attorney Mott never addresses this allegation nor provides an explanation of how, or when, he obtained Mr. Hart's medical records. *See generally Response* [#151]. While Attorney Mott could easily have submitted to the Court the written statement he was required to provide ACDF, he has not done so, and the Court therefore presumes he failed to provide one to ACDF as well.

Finally, the fact that Mr. Hart's medical condition at the time of his incarceration was disclosed in his Declaration [#151-1] does not waive his HIPAA protections. Attorney Mott has provided the Court with no authority establishing that a third party waives his right to confidential medical records by disclosing his health in a proceeding in which he is not a party. Instead, he cites to numerous cases in which courts enunciated the well known rule that when a *plaintiff's own health* is at issue, he waives his psychotherapist-client privilege. *See Response* [#151] at 12-13. Nonetheless, a third party does not impliedly waive the psychotherapist-client privilege simply by being a witness. *See Deleon*, 323 F. Supp. 3d

at 1283 n.6 ("That a witness takes the stand does not automatically waive the psychotherapist privilege even though parties can waive the psychotherapist privilege by placing their mental condition at issue."). The Court does note, however, that a party may not normally seek confidentiality based on physician-client privilege. *See Carbajal v. Warner*, No.10-cv-02862-REB-KLM, 2013 WL 1129429, at *5 (D. Colo. Mar. 18, 2013) ("There is no physician-patient privilege recognized by federal common law."). Nevertheless, HIPAA clearly makes medical records held by covered entities confidential unless proper procedures are taken. While these protections are waived when a party raises the issue of his health (principally to test whether that party is entitled to relief or a defense), like the psychotherapist privilege, these protections are not impliedly waived in the circumstances here, where the privilege holder is a non-party who seeks no recompense from the Court.

Accordingly, for the reasons stated above, the Court finds that Attorney Mott violated HIPAA by obtaining Mr. Hart's medical records without either Mr. Hart's consent or providing satisfactory assurance to ACDF.

**B.    Whether Sanctions are Appropriate**

Plaintiffs have not made a request for any specific sanction in their Motion [#138]. However, they requested during the hearing that any reference to Mr. Hart's Declaration [151-1] during trial be barred, along with use of any other inmate's medical records that have not been properly obtained. *Hr'g Tr.* [#194] at 22. According to HIPAA, violations may result in penalties of "not more than $100 for each such violation." 42 U.S.C. § 1320–5(a)(1). Although the Court has discretion on imposition of a sanction under Fed. R. Civ. P. 30(d), "HIPAA does not include any reference to how a court should treat such a

violation during discovery or at trial." *Zuckerman*, 307 F. Supp. 2d at 712. Given that an inmate's medical records obtained without regard to HIPAA is sanctionable, it is obvious that other inmate medical records gained without following HIPAA requirements cannot be used at trial, should Attorney Mott or any other party have such records. However, reference to Mr. Hart's records and his Declaration [#151-1] will be allowed for the following reasons:

For one, it was not immediately obvious to the parties that Attorney Mott's actions were a violation of HIPAA; when Attorney Mott used Mr. Hart's medical records during the Deposition, Plaintiffs did not raise any objections. *See, e.g.*, *Dep.* [#151-2] at 55-56. The medical records were also used minimally in the Deposition and much of the testimony elicited by Attorney Mott could have been obtained without them. *See Response* [#151] at 5-7. Further, even when penalties are imposed for HIPAA violations, they are minimal, only amounting to at most $100 per violation. Lastly, as noted above, few Courts have tackled the question posed by Plaintiffs' Motion [#138], thus it is not apparent that Attorney Mott was acting in spite of any well-settled law. In sum, Attorney Mott's actions did not rise to such a level of intentional and reckless disregard of his duties to the Court as to compel an extreme remedy. However, the Court will not allow continuing violations of HIPAA, and any further use of and reference to Mr. Hart's medical records, *except as already explicitly used to contradict his Declaration* [#151-1], will not be allowed.

### III. Conclusion

For the reasons stated above,

IT IS HEREBY **ORDERED** that the Motion [#138] is **GRANTED as follows.** No

party will be permitted to use inmate medical records at trial that were obtained in violation of HIPAA. To the extent that Defendants wish to use Mr. Hart's medical records at trial, Defendants may only use the portion of those records that were used to contradict Mr. Hart's Declaration [#151-1].

Dated: July 26, 2019

BY THE COURT:

Kristen L. Mix
United States Magistrate Judge