IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 16-cv-03038-KLM

THE ESTATE OF JEFFREY SCOTT LILLIS, by and through its co-personal representatives
Meghan Lillis and Michele Driscoll,
MEGHAN LILLIS, individually,
C.A.L., individually, a minor, by and through Michele Driscoll as guardian,
C.S.L., individually, a minor, by and through Michele Driscoll as guardian,
A.L., individually, a minor, by and through Robin Booth as next friend and mother,
JORDAN LILLIS, individually, and
ASHLEY PERRY, individually,

    Plaintiffs,

v.

BOARD OF COUNTY COMMISSIONERS OF ARAPAHOE COUNTY;
TYLER S. BROWN, in his official capacity as Arapahoe County Sheriff, and
RUTH KYAMBADDE, RN, individually;

    Defendants.
_____

**ORDER**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on Plaintiffs' **Motion to Compel Production** [#144][1] (the "Motion to Compel") of documents from Non-party Colorado State Board of Nursing (the "Board"). The Board timely filed a Response [#168] to the Motion to Compel, and Plaintiffs filed a Reply [#178]. In its previous Order [#207], the Court granted in part, denied as moot in part, and took under advisement in part the Motion to Compel [#144] so that it could perform an *in camera* review with respect to the documents which the Board asserted

---

[1] "[#144]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). This convention is used throughout this Order.

were protected from disclosure under the law enforcement investigative privilege. The Court has carefully reviewed the documents timely submitted by the Board on July 18, 2019 for *in camera* review. To the extent not previously ruled on in the Court's prior Order [#207], the Motion to Compel [#144] is **GRANTED in part and DENIED in part**, as set forth below.[2]

## I. Background

This case involves the death of an inmate, Jeffrey Scott Lillis ("Lillis"), while he was detained in the Arapahoe County Detention Facility ("ACDF") in Arapahoe County, Colorado. *Compl.* [#1] ¶¶ 1, 40. After the death of Mr. Lillis at ACDF, the Board, which is an administrative agency within the Department of Regulatory Agencies ("DORA"), conducted an investigation into the care and treatment provided to Mr. Lillis in the days leading up to his death. *Motion to Compel* [#144] at 2. Plaintiffs subsequently sought production by Defendant Kyambadde and former defendant nurses Robly Evans, Denise Elwell, Jason Frank, Anita Brown, and Nancy Winegar of "all records . . . relating to any and all proceedings by the . . . [Board] . . . regarding the death of Jeffrey Lillis on December 14, 2014" (hereinafter the "Board Records"). *See Motion to Compel* [#106] at 1-2. On February 7, 2019, the Court granted Plaintiffs' prior Motion to Compel [#106] with respect

---

[2] Non-party Nurses (the "Nurses"), whose records Plaintiffs are seeking from the Board, also filed a related Motion for a Protective Order and to Quash the Subpoena [#169] (the "Motion to Quash"), which the Court has already denied. *See Order* [#207]. On July 19, 2019, the Nurses filed a Notice of Appeal [#219] as to the previous Order [#207] to the extent that the Court had denied the Nurses' Motion to Quash [#169]. The appeal does not impact the Court's determination in the present Order, however, because (1) the Board has not appealed any part of the Court's prior discovery Order [#207], and (2) the Nurses did not, and could not, assert the law enforcement investigative privilege at issue here, because this privilege is reserved to the government. *See United States v. Winner*, 641 F.2d 825, 831 (10th Cir. 1981) (identifying the law enforcement investigative privilege as one of the privileges "exclusively reserved for the Government").

to Defendant Kyambadde and denied the motion as moot to the extent it was asserted against the former defendant nurses. *See Order* [#135]. The only argument asserted by the current and former defendants in opposition to the prior motion to compel was that the Court should recognize and apply the Colorado statutory peer review privilege, which the Court declined to do after determining that creation of a federal peer review privilege was inappropriate in the given circumstances. *Id.* at 10-11.

Following that Order [#135], Plaintiffs served subpoenas on the Board "requesting the production of the complete case files related to the Board's inquiries into the medical care and treatment given to Mr. Lillis" by the Nurses. *Motion to Compel* [#144] at 2. The Board "responded to the subpoenas with a number of objections and a refusal to produce any documents covered by the subpoenas." *Id.* at 3. In its Response [#168] to the present Motion to Compel [#144], the Board asserts that the Board Records are protected from disclosure on several grounds: (1) relevance; (2) confidentiality; (3) deliberative process privilege; (4) confidentiality of settlement communications; and (5) law enforcement privilege. The Board also submitted a privilege log with its Response. *See Ex. 1 to Response* [#168-1]. In the previous Order [#207] partially addressing the present Motion [#144], the Court addressed and rejected all arguments asserted by the Board except for its assertion of the law enforcement investigative privilege. Because the Court was unable to determine from the face of the privilege log whether the Board's assertion of the law enforcement investigative privilege was valid, the Court ordered the Board to submit all documents asserting that privilege (## 25, 26, 31-34, 37, 39, and 42) for *in camera* review.

## II. Legal Standard

The law enforcement investigative privilege is a governmental privilege which

belongs to the government alone and must be asserted by it. *In re M & L Bus. Mach. Co., Inc.*, 161 B.R. 689, 693 (D. Colo. 1993). It is "based primarily on the harm to law enforcement efforts which might arise from public disclosure of . . . investigatory files." *Winner*, 641 F.2d at 831 (quoting *Black v. Sheraton Corp.*, 564 F.2d 531 (D.C. Cir. 1977)). "To assert the law enforcement evidentiary privilege, the responsible official in the department must lodge a formal claim of privilege, after actual personal consideration, specifying with particularity the information for which protection is sought, and explain why the information falls within the scope of the privilege." *Winner*, 641 F.2d at 831. "The purpose of the law enforcement privilege is to prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witness and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation and otherwise to prevent interference with an investigation. *In re M & L Bus. Mach. Co., Inc.*, 161 B.R. at 693 (citations and internal quotation marks omitted). "The privilege may be overridden by the movant's substantial need for the documents and its inability to obtain their substantial equivalent by other means." *Id.* (citations and internal quotation marks omitted).

This privilege covers only "records or information compiled for law enforcement purposes. To qualify for this privilege from disclosure, the information must satisfy two conditions: its source must be a government agency, and the agency must demonstrate how a disclosure would cause one of the harms specified in [5 U.S.C.] § 552(b)(7)." *Design Basics, LLC v. ProBuild Co. LLC*, No. 10-cv-02274-REB-BNB, 2011 WL 2600980, at *4 (D. Colo. June 30, 2011) (quoting *Forest Prods. Nw., Inc. v. United States*, 62 Fed. Cl. 109, 113 (Fed. Cl. 2004) (citing *Tuite v. Henry*, 181 F.R.D. 175, 176-77 (D.D.C. 1998) (holding

that "[t]he federal law enforcement privilege is a qualified privilege designed to prevent disclosure of information that would be contrary to the public interest in the effective functioning of law enforcement. The privilege serves to preserve the integrity of law enforcement techniques and confidential sources, protects witnesses and law enforcement personnel, safeguards the privacy of individuals under investigation, and prevents interference with investigations")). The harms specified in 5 U.S.C. § 552(b)(7) include interference with enforcement proceedings, deprivation of a right to a fair trial or an impartial adjudication, unwarranted invasions of personal privacy, disclosure of the identity of a confidential source or information furnished by a confidential source, disclosure of techniques and procedures for law enforcement investigations or prosecutions, disclosure of guidelines for law enforcement investigations or prosecutions or endangering the life or physical safety of any individual.

### III. Analysis

After careful review of the documents submitted for *in camera* review, the Court determines that the material contained within the documents which is largely factual in nature does not fall within the scope of the law enforcement investigative privilege. Although the Board asserts that "release of the information would reveal the Board's case against the Nurses, including the nature, direction, and focus of its investigations," the Court finds that information which reveals the investigative mechanism can be redacted from each document submitted for in camera review. *Response* [#158] at 15.

As indicated above, the harms specified in 5 U.S.C. § 552(b)(7) include interference with enforcement proceedings, deprivation of a right to a fair trial or an impartial adjudication, unwarranted invasions of personal privacy, disclosure of the identity of a

confidential source or information furnished by a confidential source, disclosure of techniques and procedures for law enforcement investigations or prosecutions, disclosure of guidelines for law enforcement investigations or prosecutions or endangering the life or physical safety of any individual. The two harms potentially at issue here, as far as the Court can determine, are interference with enforcement proceedings against the Nurses or unwarranted invasions of personal privacy with respect to the Nurses. In order to alleviate both potential harms, the Court finds that portions of the documents should be redacted. Those redactions are as follows:

(1) Document #25:
Page 1: the first three bullet points entirely, the fourth bullet point, beginning with "What" and ending with "December 2014," and the next six bullet points entirely.

(2) Document #26:
Page 1: the second paragraph, second sentence, beginning with "Can" through to the last sentence ending with "them." The third paragraph, second sentence, starting with "was" and ending with "excerpt."

(3) Document #31:
Page 1: the second sentence, starting with "I" and ending with "time." The fourth sentence, starting with "I' and ending with "records."

Page 2: the second full sentence at the top of the page, starting with "also" and ending with "you."

Pages 2-3 of Nurse Evan's section of the Report: the bullet points in the same manner as specified above.

(4) Document #32:
Page 3 of Nurse Evan's section of the Report: the "Board/Program Guidance" section beginning with "standard" and ending with "following," along with the seven bullet points entirely.

Pages 6-7 of Nurse Evan's section of the Report: the final parenthetical at the bottom of page 6 beginning with "and" and ending with "subpoena" on page 7.

Page 7 of Nurse Evan's section of the Report: the "Investigator's note" beginning with "investigator" and ending with "interventions."

Pages 9-10 of Nurse Evan's section of the Report: the interview with Jed Caswell in the same manner as specified above.

Page 10 of Nurse Evan's section of the Report: the third full paragraph, first sentence, beginning with "indicating" and ending with "time." The third full paragraph, third sentence, beginning with "I" and ending with "records."

Pages 10-11 of Nurse Evan's section of the Report: in "contact with Mr. Evans" first bullet point, second sentence beginning with "Can" and ending with "Evans," the next three bullet points entirely, and the fourth bullet point, second sentence beginning with "was" and ending with "excerpt" on Page 11.

Pages 2-3 of Nurse Frank's section of the Report: the "Board/Program Guidance" section in the same manner as specified above.

Page 3 of Nurse Frank's section of the Report: the second paragraph of his personnel file summary, beginning with "He" and ending with "afford."

Page 6 of Nurse Frank's section of the Report: the fifth full paragraph in the same manner as specified above. The "Investigator's note" in the same manner as specified above.

Page 9 of Nurse Frank's section of the Report: the bullet points in the same manner as in specified above.

Page 10 of Nurse Frank's section of the Report: the first paragraph, last sentence beginning with "investigator's" and ending with "provided." The second full paragraph in the same manner as specified above. Each bullet point entirely.

Page 3 of Nurse Elwell's section of the Report: the "Board/Program Guidance" section in the same manner as specified above.

Pages 6-7 of Nurse Elwell's section of the Report: the same parenthetical as specified above.

Page 7 of Nurse Elwell's section of the Report: the same investigator's note as specified above.

Page 10 of Nurse Elwell's section of the Report: the bullet points in the same manner as specified above. The third paragraph in the same manner as specified above.

Pages 10-11 of Nurse Elwell's section of the Report: in "Contact with Ms. Elwell" the first three bullet points entirely, the fourth bullet point, second sentence beginning with "was" and ending with "separately," the next five bullet points entirely, the tenth bullet point, second sentence beginning with "were" and ending with "2400," and the next three bullet points entirely.

Page 3 of Nurse Winegar's section of the Report: the "Board/Program Guidance" section in the same manner as specified above. The third sentence of the first paragraph of her personnel file summary, beginning with "She" and ending with "him."

Pages 6-7 of Nurse Winegar's section of the Report: the same parenthetical as specified above.

Page 7 of Nurse Winegar's section of the Report: the same investigator's note as specified above.

Page 10 of Nurse Winegar's section of the Report: the bullet points in the same manner as specified above. The third paragraph in the same manner specified above.

Pages 10-11 of Nurse Winegar's section of the Report: in "Contact with Ms. Winegar" each bullet point entirely.

Page 3 of Nurse Brown's section of the Report: the "Board/Program Guidance" section in the same manner as specified above. The second paragraph of her personnel file summary, beginning with "During" and ending with "quit."

Page 6 of Nurse Brown's section of the Report: the same parenthetical as specified above. The same investigator's note as specified above.

Page 9 of Nurse Brown's section of the Report: the bullet points in the same manner as specified above.

Page 10 of Nurse Brown's section of the Report: the first paragraph in the same manner as specified above. Each bullet point entirely.

(5) Document #33:
Page 1: first paragraph, first and second sentences, from "The Report" to "Boeving."

(6) Document #34:
Page 1: first paragraph, first and second sentences, from "The Report" to "Boeving."

(7) Document #37:
Page 1: first paragraph, first, second and third sentences, from "The Report" to "questions."

(8) Document #39:
Page 1: first paragraph, first, second and third sentences, from "The Report" to "questions."

(9) Document #42:
Page 1: first paragraph, first and second sentences, from "The Report" to "Decker."

## IV. Conclusion

Based on the foregoing,

IT IS HEREBY **ORDERED** that, to the extent not previously ruled on, Plaintiffs' Motion to Compel [#144] is **GRANTED in part** and **DENIED in part**. The Motion to Compel is **granted** to the extent that the Board shall produce to Plaintiffs the documents at issue with the redactions indicated above. The Motion to Compel is **denied** to the extent that Plaintiffs seek production of unredacted documents.

Dated: July 29, 2019

BY THE COURT:

Kristen L. Mix
United States Magistrate Judge